681 So.2d 42 (1996)
WINNERS CIRCLE OF HOMES INC., Plaintiff-Appellant,
v.
Christopher C. BARNETTE, et al., Defendants-Appellees.
No. 28673-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*43 Richard E. Hiller, Shreveport, for Plaintiff-Appellant.
Barlow & Hardtner by Philip E. Downer, III, Shreveport, for Defendants-Appellees.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, Judge.
Winners Circle of Homes, Inc., plaintiff in action to recover a real estate commission, *44 appeals the trial court's judgment which granted defendant's exception of no cause of action and dismissed plaintiff's suit. The judgment of the trial court is reversed and this matter is remanded for further proceedings.

FACTS
On October 11, 1994, Winners Circle of Homes, Inc. (WCH) sued Christopher C. Barnette and Barnette, Wilhite and Associates, Inc. (BWA) to recover a 4% real estate commission totaling $5,280.00, plus interest, attorneys fees and costs. For purposes of evaluating the exception of no cause of action, the following allegations of and attachments to plaintiff's petition are accepted as true.
Mr. Barnette, a builder in Northwood Hills Subdivision, asked WCH to show lots in the subdivision to prospective purchasers and executed an "Exclusive Right to Sell" agreement with WCH wherein Mr. Barnette signed as owner of the property and indicated his address as 4112 Roy Rd., Shreveport, LA 71107. WCH through its agent, Janice Rudnick, showed various lots to Richard Dale and Eloise Janice Hutchinson. Due to WCH's efforts, the Hutchinsons entered a buy/sell agreement on February 9, 1994, with Mr. Barnette for Lot 82, Northwood Hills Subdivision. Mr. Barnette signed the buy/sell agreement as seller of the subject property with no reference to BWA or his relationship to that corporation. That agreement also indicated that WCH was the listing firm. Mr. Barnette was to build a new house for the Hutchinsons on Lot 82. On April 4, 1994, the agreement was changed by means of a contract addendum wherein the Hutchinsons agreed to purchase the house being built on Lot 81 of Northwood Hills Subdivision. Mr. and Mrs. Hutchinson signed the contract addendum while Mr. Barnette did not.
The "Cash Sale Deed" indicated that the property purchased by the Hutchinsons was actually owned by BWA and was executed by Mr. Barnette in his capacity as president and duly authorized representative of the corporation. That deed also evidenced that the mailing address of BWA is 707 Benton Road # 200, Bossier City, Louisiana 71111.
WCH alleged that Mr. Barnette had executed an exclusive right to sell on Lot 82 with a commission of 4% of the gross sales price. The list date is February 20, 1994, and the exclusive listing was through August 31, 1994. On July 12, WCH's attorney wrote Mr. Barnette and demanded that WCH be paid its 4% commission on either Lot 81 or 82 at the time of the Hutchinsons' closing on their home. On August 24, 1994, BWA sold Lot 81, Northwood Hills Subdivision, for $132,000.00 to the Hutchinsons by cash sale deed recorded that day under Registry No. 1444741, Caddo Parish, Louisiana. WCH has received no real estate commission and was responsible for bringing the Hutchinsons together with Mr. Barnette.
Mr. Barnette and BWA responded with an exception of no cause of action. Defendants urged that WCH's claims were contingent. Further, BWA was not a party to the exclusive right to sell agreement, and no contractual relationship existed between BWA and WCH. Defendants also noted that the exclusive right to sell agreement was limited to the sale of Lot 82, Northwood Hills Subdivision. On July 20, 1995, the trial court sustained the peremptory exception and dismissed BWA from the suit. WCH was given an opportunity to amend its petition against Mr. Barnette.
On August 4 WCH filed an amended petition alleging that WCH agents were responsible for bringing the Hutchinsons together with Mr. Barnette. Due to WCH's efforts, Mr. Barnette was able to consummate the sale of Lot 81. WCH alleged that Mr. Barnette was unjustly enriched by WCH, the efforts of which were the procuring cause of the sale. Plaintiff demanded a 4% real estate commission on the $132,000.00 purchase price. Alternatively, WCH sought a 4% commission on the $130,000.00 sales price in the contract on Lot 82.
Mr. Barnette filed a second peremptory exception of no cause of action. Since WCH based its amendment on unjust enrichment, Mr. Barnette urged that Louisiana law clearly provides that a broker's commission cannot be recovered based upon unjust enrichment. *45 Thereafter, the trial court sustained the peremptory exception of failure to state a cause of action and dismissed WCH's petition.

DISCUSSION
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true. The issue to be determined on hearing the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La. 1993). In addition to well pleaded allegations of the petition, any annexed documents must be assumed as true, and any doubt should be resolved in favor of the petition. Kuebler v. Martin, 578 So.2d 113 (La.1991); Reis v. Fenasci & Smith, 93-1785 (La.App. 4 Cir. 4/14/94), 635 So.2d 1319. The appellate court must determine if the facts alleged in the petition state any cause of action. If any cause of action is stated, then the inquiry is complete. Martin v. Bigner, 27,694 (La.App. 2 Cir. 12/6/95), 665 So.2d 709. Every reasonable interpretation must be accorded to the language of the petition in favor of maintaining its sufficiency and affording the plaintiff an opportunity to have its day in court. Hero Lands Co. v. Texaco Inc., 310 So.2d 93, 96 (La.1975). Goodwin v. Agrilite of Louisiana, 26,061 (La.App. 2 Cir. 9/21/94), 643 So.2d 249.
For a broker to recover a commission on the sale of property, he must prove that there was either an express or implied agreement on the part of the owner to pay a commission. Without such proof, the broker cannot recover compensation for his services, although his services might have resulted in benefit to the owner. A real estate broker is not entitled to payment even on a quantum merit basis when he has no express or implied contract with the party from whom he seeks a commission. There must be a contract of employment, either expressed or implied, and no one can claim compensation from one who did not employ him no matter how beneficial or valuable the services. A real estate broker may prove the existence of an oral listing agreement and brokerage contract. Woods Realty v. Brimberry Trust, 521 So.2d 810 (La.App. 2d Cir.1988). In order for a real estate broker to have a legally enforceable right to a commission, not only must a valid brokerage agreement exist between the broker and the seller, but the contract must have been made with reference to the specific transaction under which the broker claims a commission. Prado v. Golemi, 540 So.2d 589 (La.App. 5th Cir.1989).
The trial court erred in granting the exception of no cause of action and dismissing plaintiff's action for a commission against Mr. Barnette. Accepting the allegations of and attachments to the petition as true for purposes of reviewing the exception, plaintiff has alleged a cause of action for a real estate commission. Mr. Barnette sought WCH's assistance in showing property in Northwood subdivision. Plaintiff had from Mr. Barnette an exclusive right to sell Lot 82 which covered the date on which the Hutchinsons purchased Lot 81 from BWA. Mr. Barnette is the president of BWA. WCH is the listing firm on the buy/sell agreement from Mr. Barnette to the Hutchinsons. The Hutchinsons' agreement concerning Lot 82 was amended to cover Lot 81. Giving every reasonable interpretation of the language of the WCH's petition and attachment, it states a cause of action for plaintiff to proceed with its action to recover a real estate commission from this sale.
While plaintiff is not assisted by allegations of unjust enrichment nor has plaintiff made any allegations of fraud, the original petition and attachments establish that plaintiff had an agreement with defendant, who signed the agreement as owner without any reference to his relationship to BWA, the true owner of the property, to show and list property. The buy/sell contract was amended to cover the property actually sold to the Hutchinsons, so the specific transaction for which WCH seeks a commission was covered. *46 An oral brokerage contract is legal. Whether plaintiff will be able to prove all the elements necessary to recover the real estate commission remains to be revealed during the course of further proceedings, whether by motion for summary judgment supported by affidavits and depositions or by trial on the merits.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered overruling Mr. Barnette's exception of no cause of action. Costs are assessed against Mr. Barnette. This matter is remanded for further proceedings.
REVERSED AND RENDERED. REMANDED FOR FURTHER PROCEEDINGS.
CARAWAY, J., concurs with reasons to follow.
CARAWAY, Judge, concurring.
I concur in the majority's opinion that a cause of action has been stated by Winners Circle of Homes Inc. ("WCH"). I believe, however, that the cause of action narrowly centers on the alleged breach of the "Exclusive Right to Sell" listing agreement for Lot 82 which Mr. Barnette apparently executed in his individual capacity. Whether Mr. Barnette or his company, BWA, owned Lot 82 on the date of the execution of the listing agreement is not clearly pled in the petition. The Exclusive Right to Sell agreement dated February 20, 1994, which was attached to the petition, identified Mr. Barnette as "Owner" of Lot 82 and stated that Mr. Barnette "acknowledges that Broker [WCH] has fully earned his [sic] compensation when he [sic] produced a signed offer from a party ready, willing and able to purchase [Lot 82] ... and [Mr. Barnette] agrees to pay Broker such compensation even if Owner refuses to accept the offer." On the date of the execution of the Exclusive Right to Sell agreement, WCH alleges that a Buy/Sell Agreement already existed between the Hutchinsons and Mr. Barnette as a binding contract to sell Lot 82. Thus, WCH alleges that through its efforts, Mr. Barnette and the Hutchinsons were brought together for the execution of the Buy/Sell Agreement, and WCH is therefore entitled to a commission under the above quoted obligation owed by Mr. Barnette under the exclusive listing agreement.
Clouding this view of the plaintiff's claim, however, the petition also ambiguously implies that, throughout this entire time period between the preliminary contracts and the cash sale deed, the true owner of the property (Lot 82 and/or Lot 81) may have been BWA, the party which is shown on the deed to have sold Lot 81 on August 24, 1994. Nevertheless, a final judgment dismissing BWA from this suit has previously occurred in this action.
Out of the midst of this confusing set of allegations, I accept that WCH has stated a cause of action against Mr. Barnette for a breach of the alleged Exclusive Right to Sell listing agreement. The intentions of the parties to that agreement, the actual ownership of Lots 81 and 82, and the timing of the Buy/Sell Agreement in relation to the listing agreement, all of which may or may not be pertinent to the ultimate resolution of this alleged breach of contract, await the further proceedings by the trial court.