744 So.2d 197 (1999)
WESTERN DEVELOPMENT GROUP, INC., Plaintiff-Appellant,
v.
Simon Joe SHLOSMAN, Defendant-Appellee.
No. 32,343-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*198 Mills, Timmons & Flowers by George H. Mills, Jr., Shreveport, Counsel for Appellant.
Michael O. Craig, Michael Nerren, Benton, Counsel for Appellee.
Before NORRIS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
Plaintiff, Western Development Group, Inc., d/b/a Realty Executives, filed suit to recover a real estate commission associated with a Buy/Sell Agreement entered into on behalf of Defendant, Simon Joe Shlosman. Defendant filed exceptions of no cause and no right of action, which the trial court granted. Plaintiff appeals. For the reasons stated herein, we reverse the decision of the trial court.

*199 PROCEDURAL BACKGROUND

Plaintiff alleged in its petition that it, through its agent Brian Williams, and Defendant entered into an Exclusive Listing Agreement and Exclusive Right to Sell ("Agreements") giving Plaintiff authority to market and sell a mini warehouse facility on behalf of Defendant for a five percent commission.[1] Plaintiff alleged that it secured a purchaser, L.M.M. Management ("L.M.M."), who entered into a Buy/Sell Agreement with Defendant. Defendant admitted these facts.
Plaintiff further alleged in its original petition that Defendant breached the Exclusive listing agreement, in the following manner:
6.
On or about February 4, 1997, Defendant entered into a Buy/Sell Agreement with L.L.M.... A copy of the Buy/Sell Agreement is attached hereto as Exhibit B.
7.
After the Buy/Sell Agreement was executed, Defendant ... began to tell Plaintiff and its agents that he would not go through with the sale.
8.
Defendant first advised the Plaintiff's agent that he would not go through with the sale as it would create a lesion beyond moiety problem with his former wife.
9.
When this reason did not work to derail the sale Defendant advised that there was a second mortgage on the property that had a prepayment penalty that would prevent the sale.
10.
When this reason did not work to derail the sale the Defendant advised that he would have to pay capital gains on the sale and he did not want to have to pay such taxes.
11.
When this reason did not work to derail the sale, Defendant ... began contacting the buyer directly and advising the buyer that he would not go through with the sale and that if the Buyer forced him to go through with the sale he would take actions adverse to the Purchaser, the Buy/Sell agreement was terminated by [Defendant] and L.M.M.....
. . .
14.
The listing agreement attached hereto as Exhibit A provides:
In the event the Subject Property is sold, placed under contract, traded, exchanged or donated during the Term of this Agreement, Owner agrees to pay to Agent a sales commission in the amount of 5(%) percent of the total sales price[.] Said sales commission is due and payable to Agent in full at the same time the sale is consummated and title to Subject Property is passed from Owner to Purchaser. (emphasis added).
15.
The property which was the subject of the Exclusive Listing Agreement and the Exclusive Right to Sell attached as Exhibit A was `placed under contract.'
In response to Plaintiff's suit, Defendant filed exceptions of no right and no cause of action on May 11, 1998. Defendant's position was that the clause which provided for *200 the commission also required that the sale be consummated and that title pass in order for the commission to be due. The exceptions were granted by the trial court on June 4, 1998. There was a disagreement between the parties' counsel, however, regarding the wording of the judgment and whether it should have allowed Plaintiff ten days to amend its petition as provided by La. C.C.P. art. 934. Defendant submitted both forms of the judgment to the trial court which, without the benefit of a hearing, signed the version of the judgment without the ten-day provision. Plaintiff, through a variety of motions, was finally allowed to file an amended and restated petition.
The amended and restated petition provided the following new allegations:
7.
Prior to February 4, 1997, Blake McGee, acting on behalf of L.L.M ...., was in contact with Plaintiff and showed an interest in purchasing the property.... Acting on behalf of and pursuant to Defendant['s] ... instructions, Plaintiff... drafted the BUY/SELL AGREEMENT attached to the original petitio[n] as Exhibit B.
. . .
9.
In following Defendant['s] ... instructions in drafting the BUY/SELL AGREEMENT it was not Plaintiff's intention to give up any rights or real estate commission under the EXCLUSIVE LISTING AGREEMENT and EXCLUSIVE RIGHT TO SELL. In addition Plaintiff and Defendant discussed that Plaintiff would be entitled to a real estate commission when the sale was made under the BUY/SELL AGREEMENT and that Defendant ... would pay the commission.
In addressing the allegations of Defendant's bad faith, Plaintiff added this paragraph:
12.
When this reason did not work to derail the sale Defendant advised that there was a second mortgage on the property that had a prepayment penalty that would prevent the sale. During discovery it has been learned that the second mortgage on the property is held by Defendant himself.
These were further added allegations:
17.
After the attached exhibits C and D were signed by Defendant ... and the Buyer, Plaintiff ... released the escrow deposit back to the Buyer. However, the release of escrow specifically provided:
The release of the escrow deposit, as set forth herein, shall be without prejudice [against] any right Realty Executives may have to pursue and collect a commission from the Seller in connection with the transaction contemplated in the BUY/SELL AGREEMENT.
. . .
21.
The "BUY/SELL AGREEMENT" was drafted pursuant to the Defendant['s]... instructions and provided that Defendant... would pay real estate commissions. The obligation under the "BUY/SELL AGREEMENT" to pay real estate commissions was a Stipulation for a third party as provided by La. C.C. Art.1978 and was accepted by Plaintiff and in fact Plaintiff and Defendant... discussed and agreed that Defendant ... would pay a real estate commission in the amount of 5% when the sale provided by the `BUY/SELL *201 AGREEMENT' agreement (sic) was consummated.
On September 23, 1998, Defendant filed exceptions of no cause and no right of action in response to the amended and restated petition. A rule was heard on October 15, 1998. Defendant presented copies of the Agreements, which Plaintiff had attached to its petition, to the court in support of his argument. Plaintiff requested an opportunity to adduce evidence in response. The trial judge initially granted the request to be done after the lunch break. After the lunch break, however, the trial judge changed his ruling and granted the exceptions of no cause and no right of action without allowing the taking of any evidence.

DISCUSSION

No Cause of Action
An exception of no cause of action is a peremptory exception intended to test the legal sufficiency of the petition. La. C.C.P. art. 927; Steed v. St. Paul's United Methodist Church, 31,521 (La. App.2d Cir. 2/24/99), 728 So.2d 931. On hearing an exception of no cause of action, in addition to the well pleaded allegations of the petition, any annexed documents must be assumed as true, and any doubt should be resolved in favor of the petition. Winners Circle of Homes, Inc. v. Barnette, 28,673 (La.App.2d Cir.9/25/96), 681 So.2d 42. The exception generally must be overruled unless the allegations pled in the petition and annexed documents exclude every reasonable hypothesis other than the premise on which the defense is based or, in other words, unless Plaintiff has no cause of action under any evidence admissible under the pleadings. Steed, supra.
Plaintiff alleged in its petition, annexed documents and amended and restated petition that Defendant acted in bad faith in inducing L.M.M. to withdraw from the Buy/Sell Agreement, thereby breaching the Exclusive Listing Agreement. In reviewing a trial court's order granting an exception of no cause of action, an appellate court must determine if the facts alleged state any cause of action; and, if the appellate court finds that any cause of action is stated, then its inquiry is complete. La. C.C.P. art. 931; Hailey v. Hickingbottom, 30-728 (La.App.2d Cir.6/24/98), 715 So.2d 647; Winners Circle of Homes, Inc., supra. As long as the facts constituting the claim are alleged, a party may be granted any relief to which he is entitled under the pleadings and evidence. La. C.C.P. art. 862; Hailey, supra. Regardless of the theories tested by the trial court in granting an exception of no cause of action, an appellate court may determine that a cause of action exists under a different theory from its review of the facts alleged by the petition. Hailey, supra.
We find that the facts alleged by Plaintiff do state a cause of action for which Plaintiff may be granted relief. Plaintiff specifically alleged acts by which Defendant may have breached the Exclusive Listing Agreement with Plaintiff in actively preventing the close of the proposed sale. Whether these allegations can, in fact, be proven by Plaintiff at trial is of no consequence at this juncture in the proceedings.

No Right of Action
The function of an exception of no right of action is to determine whether Plaintiff has an actual interest in the action. La. C.C.P. art. 927; Grocery Supply Co. v. Winterton Food Stores, 31-114 (La. App.2d Cir.12/9/98), 722 So.2d 94; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 646 So.2d 885 (La. 1994). If Plaintiff has a right of action as to any one of the theories or demands for relief set out in its petition, an objection of no right of action should not be maintained. Id.; Clement v. McNabb, 580 So.2d 981 (La.App. 1st Cir.1991).
According to the Exclusive Listing Agreement, Plaintiff actually earned the *202 five percent commission when the subject property was placed under contract. The fact that the commission may not be due and payable until the sale is consummated does not lessen the fact that it has been earned, nor does it change the fact that Defendant is alleged to have acted in bad faith in the termination of the Buy/Sell Agreement, thereby breaching the Exclusive Listing Agreement which he had entered into with Plaintiff. We find that, given these allegations coupled with the documents attached to Plaintiff's petition, Plaintiff does, in fact, have a right of action.

DECREE
For the foregoing reasons, the judgment of the trial court granting Defendant's, Simon Joe Shlosman's, exceptions of no cause of action and no right of action, and dismissing Plaintiff's, Western Development Group, Inc., d/b/a Realty Executives', cause of action is reversed. All costs are assessed to Defendant.
REVERSED.
NOTES
[1] Defendant alleges that the amount of the commission was orally changed to four percent.