I, GASKINS, J.
The defendants, Pannell’s Associated Electric, Inc. and Acstar Insurance Company, appeal from a trial court judgment ordering them to pay the plaintiff, Mount Mariah Baptist Church, Inc., $148,620.04 arising from a dispute over a building contract. For the following reasons, we affirm in part and amend in part the trial court judgment.
FACTS
In 1998, Mount Mariah Baptist Church, Inc., “the church” decided to renovate their existing building and add a new sanctuary. The church hired Jeron Rogers, an engineer, to draw the plans. Amos Hines bid $497,000.00 to build according to the plans. The church secured financing with Hibernia Bank. The bank required that the church have a licensed and bonded contractor to oversee the project. Hines did not meet this qualification. Negotiations were entered into with Pannell’s Associated Electric (Pannell’s) which was licensed and bonded. The church insisted that Hines be the foreman on the project.
On February 8,1999, the church entered into a contract with Pannell’s to do the work for $497,000.00. The parties had reviewed cost estimates made by Hines and by Pannell’s for the various components of the construction. In the contract, Nathan Holden was designated as the architect. The contract contemplated that the architect would oversee work performed by *884 Pannell’s and would authorize periodic payments to the company. The document also provided that the project would be built according to plans and specifications. Any changes from the plans would [¡¡cost extra. The contract required that the defendant start work within 30 days of the contract, with substantial completion within 180 days of the date of commencement.
Financing was not complete until April 1999, when Acstar Insurance Company (Acstar) issued a performance bond in the amount of $497,000.00. Construction began within 30 days of obtaining financing. The plans furnished by the church were lacking in detail. Generally, the architect hired by the owner would be consulted throughout the construction process regarding lack of detail or other problems with the plans. In this case, the architect sought payment from Pannell’s. However, Pannell’s contended that the architect was to be paid by the church. Apparently, due to nonpayment, the architect ceased work on the project. It appears that Pannell’s was then forced to consult directly with representatives of the church regarding the lack of specificity in the plans.
The church then began making oral changes to the plans without change orders and without paying for the changes. Due to the failure to pay the architect, there was no review of the changes. The changes included the alteration of the thickness of the concrete slab, deletion of classrooms, changes to the balcony, change of the size of the pulpit area, and changes to the choir area. Two bathrooms were deleted and a lounge was added to the entry area. Other changes were made to use more expensive materials than originally called for. Wood paneling was placed behind the choir area |ginstead of sheetrock and more expensive stained glass windows were added. Different and more extensive lighting was installed. These changes were made by the church’s pastor, Johnny Baylor, and/or one of the deacons, Robert Boyd. The changes were implemented by Hines, often without any consultation with Pannell’s.
In October 1999, the church presented Pannell’s with a bill for more than $18,000.00 for a sound system that was not included in the plans. The preliminary cost allowances provided $4,000.00 for a sound system. Pannell’s refused to pay the bill or to pay for any more changes without a change order. The parties reached an impasse at this point and the church contacted Acstar on the performance bond, claiming that Pannell’s had stopped work on the project. The problem was temporarily worked out and Pan-nell’s continued to work.
Pannell’s insisted that the church owed approximately $58,964.00 for changes made to the plans. When an agreement as to this amount could not be reached, the church locked Pannell’s off the job site, refusing to let the company continue with the work. Subcontractors, who had not been paid, filed liens against the church.
Due to the changes in the original plans, which increased the seating capacity of the sanctuary, the fire marshal changed the building’s classification from “Class C” to “Class A.” This required extensive modifications to the fire alarm, sprinkler, air conditioning and electrical systems. The fire marshal would not allow the building to be occupied without the modifications.
4On April 5, 2000, the church filed suit against the defendants, basically asserting a claim for breach of contract. The church claimed that Pannell’s failed to complete the renovation and construction in accordance with the design and specifications. The church also alleged that Pannell’s failed to pay invoices for labor and materials resulting in numerous liens. The church asserted that Pannell’s departed *885 from the design for the work resulting in a different classification by the fire marshal and requiring extensive additional work to meet fire code regulations. The church attached a list of deficiencies in the building to its pleadings and sought to recover for unpaid claims for labor and materials, the expense of having another contractor complete the work, costs of performing the work required by the fire marshal, costs to redo unsatisfactory work performed by Pannell’s, sums due for breach of contract by Pannell’s, additional costs for material, labor, and engineering, and additional architectural fees, legal fees, and costs.
The defendants answered and filed a reconventional demand against the church, the members of the building committee, and the pastor. According to the defendants, the church breached the contract by failing to retain an architect or engineer to oversee the work and in making numerous changes to the original plan without paying for them. The defendants sought $112,555.00, which included the cost of the changes, the amount necessary to perform work required by the fire marshal, costs associated with any increase in bond premiums, lost profits, costs associated with lien Isfilings, and attorney fees and costs. Pannell’s also complained that the church refused to allow the company to finish the project.
The pastor and building committee members filed an exception of no cause of action which was granted by the trial court. The matter was tried and on November 13, 2001, a judgment was filed, ordering the defendants to pay the church $136,850.04 together with $11,770.00 in expert witness fees.
In written reasons for judgment, the court found that this was a suit for breach of contract, redhibition, and quantum merit. The court noted that the project cost more than anticipated and the church was riot satisfied with the quality of the work. Also, some of the labor and materials were not paid for by Pannell’s.
The court denied the church’s redhibition claim, finding that the church was using the facility and was largely satisfied with it. However, because many aspects of the construction were substandard, the court found that a reduction in price was warranted.
The court found that the church was entitled to reimbursement for five liens against the property totaling $46,249.45. The court then went through a list of deficiencies in materials and construction and set forth the amounts due the church for these items. The church was also awarded a credit for the cost of a metal roof originally contemplated in the plans. The court allowed a credit to the church for the amount needed to complete the project. The court further found that the church was entitled to recover | (¡expert witness fees. The total amount the court found due to the church was $183,823.04.[1]
The court then found that this amount was subject to an offset for items due to the defendants. The court found that the church had to pay for a thicker slab than specified in the plans. Pannell’s was also granted recovery for the cost of the sound *886 system not included in the plans, but paid for out of the contract price. The court found that a final payment under the contract was owed to Pannell’s.[2]
The court noted that the plans for the project were inadequate, and that the church did not provide an engineer or architect as required by the contract. The court denied Pannell’s claim for lost profits due to the church’s action in seeking to enforce the performance bond. According to the court, although the church erroneously believed that the bond was an additional source of funding, the quality of the work was substandard. Therefore, the church was entitled to seek enforcement of the performance 17bond. The total amount of the set-off allowed to the defendants was $35,203.00. Therefore, the judgment awarded to the church was $148,620.04. The defendants appealed, asserting numerous assignments of error.
JUDGMENT AGAINST DEFENDANTS
The defendants argue that the trial court erred in rendering judgment against them. They contend that it was the church that breached the contract and caused the damages by failing to retain the services of an architect and/or engineer, in making modifications to the plans without paying for the changes, in failing to communicate with Pannell’s, and in refusing to allow Pannell’s access to the project. They contend that by January or February 2000, the project was substantially completed and that the church was responsible for all delays in the completion of the project. The defendants claim that all damages were caused by the church and the court’s judgment unjustly enriches the church.
Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art.1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. Where factual findings are pertinent to the interpretation of a contract, those factual findings are subject to the manifest error standard of review. Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Memorial Trust, 32,048 (La.App.2d Cir.8/20/99), 751 So.2d 928, writs denied, 99-2948, 99-2958 (La.12/17/99), 752 So.2d 166.
|RA court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993). In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. If the factfinder’s findings are reasonable in light of the record, viewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Absent a finding of manifest error, the judgment should be upheld. Peterson Contractors, Inc. v. Herd Producing Company, Inc., 35,567 (La.App.2d Cir.2/27/02), 811 So.2d 130.
La. C.C. art. 2769 governs building contracts. It provides:
If an undertaker fails to do the work he has contracted to do, or if he does not *887 execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
In construction contracts, Louisiana law implies that the contractor will construct the work in a good and workmanlike manner, the work will be suitable for its intended purpose, and the work will be free of defects in workmanship or materials. Peterson Contractors, Inc. v. Herd Producing Company, Inc., supra.
Accordingly, the jurisprudence dictates that a contractor is liable for damages if it is shown that he did not possess the necessary skill, efficiency or knowledge, or did not exercise ordinary care in performing work and is | flliable for losses, which the owner suffered because of the contractor’s non-compliance with the contract. Austin Homes, Inc. v. Thibodeaux, 2001-1282 (La.App. 3d Cir.5/8/02) 821 So.2d 10, writ denied, 2002-2324 (La.11/15/02), 829 So.2d 436.
An owner seeking to recover from a contractor bears the burden of proving: 1) both the existence and nature of the defects; 2) that the defects were due to faulty materials or workmanship; and 3) the cost of repairing the defects. Guy T. Williams Realty, Inc. v. Shamrock Construction Company, 564 So.2d 689 (La.App. 5th Cir.1990), writ denied, 569 So.2d 982 (La.1990).
La. R.S. 9:2771 provides:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
If the defect in the construction is caused by faulty or insufficient plans or specifications, the contractor is immune from liability upon constructing in compliance therewith, provided the specifications are not provided by him. Dumas v. Angus Chemical Company, 31,399 (La.App.2d Cir.1/13/99), 729 So.2d 624; Peterson Contractors, Inc. v. Herd Producing Company, Inc., supra.
|inThe plaintiff and the defendants have each claimed that the other party breached the contract and are liable for damages. As found by the trial court, in essence, both parties breached the contract. The church furnished Pannell’s with a set of plans that lacked the necessary degree of specificity regarding many details. The church failed to retain the services of an architect to provide information as to the details of the plan and to consult when the plans were not workable. The presence of an architect, as contemplated by the contract between the parties, would have avoided many of the problems that eventually developed.
The church proceeded to change the plans and implemented those changes through Hines, often with no prior notification to or consultation with Pannell’s. However, the record also shows that in numerous instances, the work performed by Pannell’s was substandard and was not attributable to deficient plans or to changes made by the church. Therefore, *888 Pannell’s breached the building contract by failing to perform in a good and workmanlike manner. Accordingly, the trial court did not err in finding that the contract was breached by Pannell’s and in awarding judgment against the defendants.
CALCULATION OF DAMAGES
The defendants argue that the trial court erred in its calculation of the award to Pannell’s. While they agree with the court’s decision to make an award for the increase in concrete thickness, the sound system, and the failure to pay the final contract payment, they claim that they should also have recovered for all the changes required by the church, for lost profits, |nand for other items included in the reconventional demand. These arguments have some merit.
In awarding damages in this matter, the trial court considered the case to involve breach of contract, redhibition, and quantum merit. Although the court stated that it rejected the claim for redhi-bition, it found that a reduction in price was appropriate. We find that the trial court was erroneous in this reasoning. Concepts of redhibition apply in the context of sales. This case does not involve a sale. Rather, it involves a building contract between an owner, a contractor, and the contractor’s surety. Where the relationship is that of a contractor-owner rather than that of a vendor-vendee, the principles for an action for redhibition or a reduction in price are not applicable. Davidge v. H & H Construction Company, 432 So.2d 393 (La.App. 1st Cir.1983). Accordingly, the awards made by the trial court will be reviewed in the context of breach of a building contract.
The standard for reviewing the award of damages for breach of contract is whether the trial court abused its discretion. Hernandez v. Martinez, 2000-1282 (La.App. 5th Cir.2/28/01), 781 So.2d 815. For a breach of a building contract under La. C.C. art. 2769, the appropriate measure of damages is the cost of repairing any defects or of completing the work. Guy T. Williams Realty, Inc. v. Shamrock Construction Company, supra.
Where the owner presents evidence of the cost of completion of the work or correction of the defective work, the contract price may be reduced by that amount. The factors to be considered in determining whether there |1Phas been substantial performance include the extent of the defect or non-performance, the degree to which non-performance has defeated the purpose of the contract, the ease of correction, and the use or benefit to the owner of the work already performed. Mayeaux v. Mclnnis, 2000-1540 (La.App. 1st Cir.9/28/01), 809 So.2d 310, writ denied, 2001-3286 (La.3/8/02), 810 So.2d 1164.
Under Louisiana law, a building contractor is entitled to recover the contract price even though defects and omissions are present when he has substantially performed the building contract. “Substantial performance” means that the construction is fit for the purposes intended despite the deficiencies; this is a question of fact for the trial judge. Mayeaux v. McInnis, supra.
The trial court allowed recovery to the church for liens filed against it. Several liens were filed against the church when subcontractors and suppliers were not paid. The defendants argue that the liens were caused by the church’s cost overruns. Many of the deficiencies are attributable to the defendants. The defendants failed to show that the liens were filed solely as a result of the church’s actions. The defendants have not adequately shown that the trial court erred in *889 this regard, therefore, this portion of the award is affirmed.
In this case, the trial court evaluated the various deficiencies in the church construction and made determinations as to whether they were caused by the faulty construction plans, the changes made by the church, or by Pannell’s workmanship. The trial court noted that there were numerous | ^deficiencies in the quality of work done by Pannell’s. The court allowed recovery for seven areas it termed substantial deficiencies rather than items that would ordinarily be repaired on a punch list. The first of these is the uneven gable eave that juts out in an irregular fashion over a stone area on the front of the building. The court found this was due to improper construction and allowed the church recovery of $10,000.00 to repair this item. Patrick D. Bass, an architect, testified that this deficiency was not according to the plans furnished by the church. Therefore, we find that the trial court’s award in this regard was proper.
The court awarded $5,000.00 to repair problems with the bricks. It found that there were holes in the walls where temporary electrical service had been installed, there was inconsistency in the mortar joints, and there were encroachments on the door frames causing the doors not to open properly. This appears to be an item of substandard work by Pannell’s and the trial court did not err in making an award for these deficiencies.
The court noted that the carports or porte cocheres on the east and west sides of the church have deflections in their load-bearing beams. In other words, the roofs sag. The court allowed $6,000.00 for repair of this problem. However, Donald Willis, a general contractor who examined the church, testified that the problem with this portion of the structure was attributable to a design defect. Bass concurred in this assessment. There is nothing in the record to show that the sag is the result of poor workmanship. Therefore, we find that the trial court erred in allowing recovery for this | urepair. We amend the judgment to delete recovery for repair of the porte cocheres.
The trial court granted recovery to the church in the amount of $5,000.00 to repair laminated beams which were left outside, unprotected, during construction and which have now begun to mildew. This deficiency is attributable to substandard work by Pannell’s. The trial court did not err in making an award for this item.
The trial court found that several items of finish work needed to be done due to Pannell’s substandard work. These included finish work in bathrooms, unacceptable drywall work and improper finishing of wood trim and paneling. The court’s finding is supported by the record. There is no showing that the factors were attributable to the faulty plans or to changes made by the church. The court did not err in awarding $12,500.00 to complete the finish work.
The court allowed recovery to the church for $10,000.00 for light cove that was improperly installed. According to Bass, the lighting trough purlins were not true and square and the framing was not properly installed. Insulation was exposed on the wall above the lights. This type of lighting was not included in the original plans and was added by the church. However, these deficiencies are all the result of poor workmanship by Pannell’s. The trial court did not err in making this award.
The trial court further found that insufficient space was provided in passageways, stair risers were not properly constructed, and there was inadequate access to the baptistry. These factors are attributable to faulty |1Bdesign in the construction *890 plans. Therefore, the defendants are not liable for these deficiencies. Further, the trial court allowed recovery for drywall work and unlevel door trims. While these items are attributable to Pannell’s, the trial court already made an award for finish problems such as drywall and wood trim. Therefore, we amend the trial court judgment to delete this $20,000.00 award to the church.
The trial court allowed the church a credit of $14,300.00 for a metal roof. The original plans called for a metal roof, but an asphalt shingle roof was installed instead. The cost of the shingle roof was much less than the expense of a metal roof. The church was entitled to a credit for this reduction in price. The trial court correctly granted a credit for this item.
The trial court allowed the church $33,003.59 to complete the project, excluding repairs required by the fire marshal. The necessary items for completion include repair of a sewer line cut by an electrician, completion of the electrical system, and equipment rental. These items were not required because of design defects in the building plans. Accordingly, the trial court did not err in making this award.
ENFORCEMENT OF THE PERFORMANCE BOND
The defendants assert that the trial court erred in finding that the church acted properly in seeking enforcement of the performance bond. They continue to argue that any defects in the construction were caused by compliance with the plans furnished by the church and the church’s changes to those plans. Therefore, the church should not have sought enforcement of the performance bond. Pannell’s seeks to recover damages for lost 11fiprofits caused by the inability to obtain bonds for other jobs and for increases in premiums for performance bonds. This argument is without merit.
Although some of the problems in this case were caused by the lack of specificity in plans furnished by the church and by changes made by the church, other deficiencies and increases in costs were caused by substandard work by Pannell’s. The agreement under the performance and payment bond includes the obligation of true and faithful performance of the building contract. The concept of breach of default on a contract is not limited to the obvious case of the nonperformance of the contract, but extends to any major departure from the contract even though the building itself is actually physically completed. This includes negligent performance of the building contract. See Congregation of St. Peter’s Roman Catholic Church of Gueydan v. Simon, 497 So.2d 409 (La.App. 3d Cir.1986).
As discussed above, there were some deficiencies in the performance of the building contract caused solely by Pan-nell’s substandard work. Under these circumstances, the trial court did not err in finding that the church acted appropriately in seeking enforcement of the performance bond. Accordingly, the court did not err in denying Pannell’s claim for lost profits and for his increase in bond premiums occasioned by the church’s action in seeking to enforce the bond.
INEXPERT WITNESS FEES
The defendants claim that all problems with the quality of work are due to changes made by the church or by the plans furnished by the church. They also assert that much of the work complained of as substandard was completed by other workers after Pannell’s was shut out of the job. They claim that the church’s experts did not look at the plans furnished by the *891 church and were not aware of the state of the work at the time Pannell’s was put off the job. They contend that the experts could not adequately address whether the problems were caused by defective workmanship by Pannell’s, or by the change in plans, or by other workers. Therefore, they insist that expert witness fees should not have been awarded.
Witnesses called to testify as expert witnesses shall be compensated for their services, with the amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. La. R.S. 13:3666; Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, 34,086 (La.App.2d Cir.11/1/00), 772 So.2d 306. An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. The trial judge is not required to set an expert fee at the amount charged by the expert witness. The trial judge has great discretion in awarding and fixing costs and expert fees. A trial court’s assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, supra.
h «Factors to be considered by the trial judge in setting an expert witness fee include time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Additional considerations include the helpfulness of the expert’s report and testimony to the court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases. Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, supra.
In the present case, the trial court taxed expert witness fees for a report outlining the deficiencies in the construction. The court also granted expert witness fees for the testimony of Patrick D. Bass and Donald Willis, who further outlined the deficiencies of the construction and offered guidance as to whether the deficiencies were the result of poor workmanship or design defects. The report and testimony was obviously helpful to the trial court in reaching its decision. We do not find that the trial court abused its discretion in taxing the cost of these items as expert witness fees in this case.
NO CAUSE OF ACTION
The defendants argue that the trial court erred in granting an exception of no cause of action filed by the pastor and members of the building committee. The defendants’ claims against these defendants-in-reconvention were dismissed with prejudice. The defendants urge that the church changed its representative in violation of the terms of the |13contract. According to the defendants, the pastor and members of the church building committee were representatives of the church and were the individuals responsible for making changes to the plans. They also insisted that Hines be the-foreman of the project. The defendants contend that, even if these individuals were not parties to the written contract, they entered into numerous oral contracts that were breached. The defendants assert that the award to the church should be adjusted to reflect the role of these individuals in causing the damages.
An exception of no cause of action is a peremptory exception intended to test the legal sufficiency of the petition. La. C.C.P. art. 927. Western Development *892 Group, Inc. v. Shlosman, 32,343 (La.App.2d Cir.9/22/99), 744 So.2d 197. On hearing an exception of no cause of action, in addition to the well pleaded allegations of the petition, any annexed documents must be assumed as true, and any doubt should be resolved in favor of the petition. The exception generally must be overruled unless the allegations pled in the petition and annexed documents exclude every reasonable hypothesis other than the premise on which the defense is based or, in other words, unless the plaintiff has no cause of action under any evidence admissible under the pleadings. Western Development Group, Inc. v. Shlosman, supra.
In the present case, the trial court did not err in granting the exception of no cause of action. The record shows that the plaintiffs dealt with Robert Boyd, Johnny Baylor, or members of the building committee only in their capacities as representatives of the church. Further, Boyd was designated in Lpthe building contract as the representative of the church. The record does not justify the imposition of personal liability on these individuals. The trial court did not err in granting the exception of no cause of action.
CONCLUSION
For the reasons stated above, we affirm the trial court’s finding of liability against Pannell’s based upon its breach of the building contract. We also affirm that portion of the trial court judgment finding that the church properly sought to enforce Pannell’s performance and payment bond, awarding expert witness fees to the church, and granting the exception of no cause of action, dismissing the defendant’s claims against the pastor and members of the church’s building committee.
We amend the trial court’s calculation of damages and its award to the church to delete recovery for porte cochere repairs, structure and drywall repair, and credit for a metal roof. However, we affirm that portion of the trial court judgment allowing a set-off to the defendants in the amount of $35,203.00. Accordingly, as amended, and allowing for the set-off, the defendants owe the plaintiff $112,620.04. Costs in this court are assessed one-half to the plaintiff and one-half to the defendants.
AMENDED, AND AS AMENDED, AFFIRMED.

. The amounts allowed to the plaintiff are:
Labor and material liens 46,249.45
Gable eave repair 10,000.00
Brick work repair 5,000.00
Porte Cochere repair 6,000.00
Laminated beam repair 5,000.00
Interior finish repair 12,500.00
Light cove repair 10,000.00
Structure and diywall repair 20,000.00
Metal roof credit 14,300.00
Project completion credit 33,003.59
Expert fees 11,770.00
We note that these figures total $173,823.04 rather than $183,823.04 as found by the trial court.

. The set-off amounts allowed to the defendants are:
Concrete thickness 8,116.00
Sound system 18,087.00
Final contract payment 9,000.00 35,203.00