907 So.2d 880 (2005)
CREAMER BROTHERS, INC. and Robert N. Creamer, Plaintiffs-Appellants
v.
Lisa Annette Whitney HICKS a/k/a Lisa Whitney, and Nelson W. Cameron, Defendants-Appellees.
No. 39,799-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*881 William A. Lanigan, III, Shreveport, for Plaintiffs Appellants.
Cook, Yancey, King & Galloway, by Herschel E. Richard, Jr., Douglas L. Harville, Shreveport, for Defendant Appellee Nelson W. Cameron.
Ginger W. Johnson, Shreveport, for Defendant Appellee Lisa Annette Whitney Hicks.
Before STEWART, GASKINS and MOORE, JJ.
STEWART, J.
The plaintiffs, Creamer Brothers, Inc., and Robert Creamer (referred to collectively as "Creamer"), appeal a judgment of dismissal on an exception of no cause of action as to their claims for damages against the defendant, Nelson Cameron, for breach of contract, breach of fiduciary duty, and loss of business opportunity. Following our de novo review of the record, we find that the exception of no cause of action should not have been granted. The factual allegations when accepted as true state a cause of action for which relief may be granted if the allegations are borne out at trial. Therefore, we reverse the trial court's judgment and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
The facts as set forth in Creamer's petition and attachments thereto show that he filed suit on an open account in 1996, against Lisa Annette Whitney Hicks (referred to as "Whitney" in the petition and herein), a former employee. She reconvened for damages alleging sexual harassment, battery, abuse of process, and violations of the Violence Against Women Act, 42 U.S.C. § 13981 et seq. The matter was *882 removed to the federal court where a trial ensued. The jury awarded Creamer $535 on his main demand. The jury also found in favor of Whitney and awarded her $13,000 for loss of wages, $17,000 in general damages, $200 in medical expenses, and $31,000 in attorney fees for a total award of $60,200. The judgment against Creamer was affirmed by the Fifth Circuit on July 16, 1999. Creamer did not seek a writ of certiorari before the U.S. Supreme Court. Whitney's attorney, Nelson Cameron, scheduled a judgment debtor examination for September 27, 1999. Creamer negotiated an agreement with Cameron whereby Whitney would forgo her right to the judgment debtor examination upon Creamer's tender of $65,000 for deposit into Cameron's client trust account as a demonstration of Creamer's good faith and ability to ultimately pay the judgment. A copy of the September 27, 1999, letter agreement was attached as Exhibit A to Creamer's petition. The letter states that the funds "will not be disbursed until the final resolution of this matter and the mutual agreement of the parties." The letter agreement further provides that interest accrued on the deposit will be payable to Whitney "pending a final affirmation of the judgment in question."
Creamer's petition then recounts that on November 4, 1999, Cameron notified Creamer's trial attorney, James Madison Woods, of his intent to disburse the funds. This notification letter is attached as Exhibit C to Creamer's petition. In the letter, Cameron claims that Creamer owes $400 more than the $65,000 he tendered. By a letter dated November 11, 1999, Woods notified Cameron that Creamer did not agree to the disbursement. The letter, which is attached to the petition as Exhibit D, suggests that the parties must draft settlement and receipt and release documents, determine the legal status of the money held in Cameron's client trust account, and answer questions about Cameron's "third increment of attorneys fees." Creamer's petition alleges that despite his objections, Cameron disbursed the funds to Whitney in two payments between October 1999 and December 1999.
Then, on November 19, 1999, Cameron filed a pleading styled "Motion to Make Judgment Executory, For Writ of FIFA, For Garnishment, Consent by Garnishee" in the federal district court. The pleading which is attached to Creamer's petition as Exhibit F states that the total due Whitney for her award and attorney fees is $60,361.37 and that Cameron will be filing another application for attorney fees that will exceed $5,000. In response, Creamer filed a motion to quash, upon which the federal magistrate scheduled a hearing and issued a minute entry order stating, "Counsel for defendant is directed not to disburse the funds in question pending further order." According to Creamer's petition, Cameron suggested at the hearing, the transcript of which is attached to the petition as Exhibit G, that the funds remained in his account. The hearing transcript shows that the federal magistrate denied Creamer's motion to quash, because no writ of fieri facias had yet been issued. Cameron then filed a motion for attorney fees in January 2000, for his efforts to collect on the past awards. In a memorandum ruling on April 28, 2000, the magistrate denied the motion as being inadequate and premature. The ruling is attached to the petition as Exhibit H. It notes that Whitney had not yet met the prerequisite to seizure or garnishment by obtaining a writ of fieri facias and that she "is no closer to execution of the past awards now than she was on the days they were entered." The ruling also provides that the denial of the motion for attorney fees is without prejudice and that Whitney *883 may file another motion for fees if she takes future steps to collect the past awards.
Nine months later, on January 26, 2001, Creamer, through counsel, inquired about the status of the funds in Cameron's client trust account. By letter dated February 7, 2001, Exhibit I attached to the petition, Cameron replied that Creamer's funds had been "accepted and disbursed."
Creamer asserted four claims against Cameron based on these factual allegations. First, Creamer alleged that Cameron breached their agreement and misappropriated the funds tendered by Creamer for deposit into Cameron's client trust account when Cameron withdrew the funds without Creamer's consent. Second, Creamer alleged an abuse of process claim that was later voluntarily dismissed by him. Third, Creamer alleged that his tender of the funds for deposit into Cameron's client trust account created a fiduciary relationship between them which Cameron breached when he seized and disbursed the funds without obtaining Creamer's consent as per their agreement. Fourth, and as an alternative should the trial court find disbursement of the funds was not in violation of the agreement, Creamer alleged that Cameron caused him to lose business opportunities due to his failure to cancel the judgment upon receiving the funds in September 1999, and his alleged concealment until January 2001, of the fact that he had disbursed the funds. This latter complaint was based on financing allegedly denied to Creamer because of the outstanding judgment against him.
In response to Creamer's petition, Cameron filed a peremptory exception of no cause of action as to the first, second, and fourth claims described in the preceding paragraph. Cameron alleged that Creamer tendered the funds voluntarily, that the funds were not extrajudicially seized, and that the funds were disbursed in accordance with the valid conditions of the agreement. Cameron argued that the agreement was subject to a suspensive condition that the funds could not be disbursed without mutual consent and that the condition was null as it depended solely on Creamer's will.
The trial court granted the exception of no cause of action in a judgment rendered October 1, 2004, and dismissed all Creamer's claims with prejudice. In a written ruling, the trial court reasoned that Creamer could have unilaterally withheld consent to disbursal of the funds and concluded that this made consent a null suspensive condition under La. C.C. art. 1770. Thus, Creamer failed to state a cause of action as to his claims for breach of contract, misappropriation of funds, and breach of fiduciary duty. Because of Exhibit C, a letter from Cameron stating that Creamer owed an additional sum of $400 to satisfy the judgment, the trial court also concluded that Creamer failed to state a claim for loss of business opportunity stemming from Cameron's alleged failure to cancel the judgment.
Creamer now appeals the trial court's judgment.

DISCUSSION
The law applicable to consideration of an exception of no cause of action was explained by the Louisiana Supreme Court in Industrial Companies, Inc., v. Durbin, XXXX-XXXX (La.1/28/03), 837 So.2d 1207, 1213, as follows:
First, we focus on whether the law provides a remedy against the particular defendant in this case. The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. The peremptory exception *884 of no cause of action is designed to test the legal sufficiency of the petition by determining whether the particular plaintiff is afforded a remedy in law based on the facts alleged in the pleading. The exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court and this court should conduct a de novo review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial.
(Citations omitted.)
In reviewing rulings on exceptions of no cause of action, exhibits attached to the petition may also be considered in determining whether the law extends a remedy to the plaintiff under the factual allegations of the petition. Kuebler v. Martin, 578 So.2d 113 (La.1991); Winners Circle of Homes Inc. v. Barnette, 28,673 (La.App. 2d Cir.9/25/96), 681 So.2d 42; and Powell v. Dorris, 35,510 (La.App. 2d Cir.4/5/02), 814 So.2d 763.
Creamer asserts three assignments of error as to the trial court's judgment. First, he asserts that the trial court failed to correctly apply the law applicable to exceptions of no cause of action, particularly in failing to view the facts pleaded in the petition in favor of the plaintiff. Creamer complains that the trial court ventured beyond the petition to make findings of fact and improperly considered the exception as a motion for summary judgment. Second, he asserts that the trial court erred in applying La. C.C. art. 1770 in the context of an exception of no cause of action. Creamer argues that the trial court erred in concluding that the condition of consent was a suspensive condition dependent solely on his whim. Third, Creamer argues that the trial court erred in dismissing his petition without at least giving him an opportunity to amend it.
In response, Cameron asserts that the trial court correctly applied the law and limited its inquiry to the petition and attached exhibits. Cameron also asserts that the trial court's consideration of La. C.C. art. 1770 was appropriate. Considering Creamer's admissions that he did not seek a writ of certiorari after the Fifth Circuit affirmed the award of damages and that he had never given his consent for disbursal of the funds, the trial court could reach only one of two conclusions: (1) that consent was a suspensive condition subject to Creamer's whim and therefore null under La. C.C. art. 1770, or (2) that Creamer had not acted in good faith. Cameron argues that under either conclusion, Creamer has no cause of action. Lastly, Cameron argues that the trial court did not abuse its discretion in dismissing Creamer's claims without first allowing him to amend his petition to state a cause of action. Creamer did not seek leave to amend the petition. Also, there was no showing that the grounds for the exception could be removed by amendment. The fundamental controversy in this matter stems from the agreement regarding Creamer's tender of $65,000. The agreement is memorialized by a letter attached to the petition as Exhibit A. This *885 letter states, "As was agreed upon ... the funds will be deposited into your [Cameron's] trust account, and will not be disbursed until the final resolution of this matter and the mutual agreement of the parties." Creamer alleged in his petition that he tendered the funds as a demonstration of his "good faith and ability ultimately to pay the judgment" and with the understanding the funds "would not be removed without the mutual consent of the parties." The petition also alleges that Cameron eventually disbursed the funds without Creamer's consent. As shown by the petition, the parties never reached mutual consent regarding disbursal of the money in satisfaction of the judgment. Thus, one of the conditions for disbursal of the money was not satisfied.
The trial court accepted Cameron's argument that Creamer has no cause of action because the unsatisfied consent condition is a suspensive condition subject to Creamer's whim and makes the obligation null under La. C.C. art. 1770. This article states, "A suspensive condition that depends solely on the whim of the obligor makes the obligation null." La. C.C. art. 1770. While Creamer's failure to consent to disbursal of the funds to satisfy the judgment against him upon finality of that judgment certainly appears unreasonable, the petition and attached exhibits also show that there was some dispute as to the final amount owed, particularly as to attorney fees payable to Cameron for post-judgment collection efforts. This dispute is evidenced by the following:
1. Exhibit Ca letter dated November 4, 1999, in which Cameron lists the amounts he claims are due, inclusive of over $5,000 in attorney fees for post-judgment collection efforts, and concludes that Creamer owes $400 more than the amount he tendered;
2. Exhibit Da reply letter by Creamer's counsel dated November 11, 1999, which indicates that Creamer has questions about Cameron's "third increment of attorneys fees";
3. Exhibit Fthe "Motion to Make Judgment Executory, For Writ of FIFA, For Garnishment, Consent by Garnishee" in which Cameron states that he will be filing an application for attorney fees in excess of $5,000 for work done in collecting the judgment, the amount of which alleged to be due is $60,361.37;
4. Exhibit Gthe January 6, 2000 hearing transcript on the motion to quash the above listed motion which indicates that Cameron had not yet filed the application for attorney fees; and
5. Exhibit Ithe federal magistrate's memorandum ruling of April 28, 2000, denying Cameron's application for attorney fees and costs in the amount of $8,139.79 for collection efforts.
These exhibits suggest that the amount due by Creamer on the judgments against him may have been less than the amounts tendered by him in accordance with the agreement and that Cameron has never obtained approval for any post-judgment attorney fees for his collection efforts.
Considering the dispute over the amount due as evidenced by the petition and attached exhibits, we cannot agree that Creamer's petition fails to state a cause of action for which relief may be granted. His allegations, when taken as true, show that the agreement was breached by disbursal of the money without mutual consent of the parties and that amounts in excess of the judgment against him might have been misappropriated. Our duty in addressing an exception of no cause of action is not determine the ultimate merits of the cause of action asserted, however specious they might appear; rather, it is to accept the factual *886 allegations as true and to determine whether the law extends a remedy to the plaintiff based on the facts alleged in the petition. We find that the trial court went beyond the allegations of the petition to address the ultimate merits of Creamer's claims when it found Creamer's consent to be a suspensive condition subject to his whim. This finding may very well prove to be correct, but that determination cannot be reached on the petition and attached exhibits alone. Moreover, the trial court overlooked the dispute as to the amount of attorney fees due Cameron and the fact that this dispute might have been a basis for Creamer's withholding of consent. While this may be a matter for resolution on a summary judgment, at this juncture, the petition does not fall for failure to state a cause of action.

CONCLUSION
For the reasons stated, the judgment of the trial court granting Cameron's exception of no cause of action and dismissing Creamer's claims is reversed, and the matter is remanded for further proceedings. Costs are assessed against Cameron, the appellee herein.
REVERSED AND REMANDED.