PEATROSS, J.
|, After a bench trial in this breach of contract case, the trial judge denied the claims of Plaintiffs, Clifton and Alverne Lewis (“the Lewises”), determining that they failed to sustain their burden of proof in establishing fault on the part of Defendant, La Adrienne, Inc. d/b/a Floor Works (“Floor Works”). In his reasons for judgment, the trial judge noted that the Lew-ises had failed to prove poor workmanship, which was an essential element of their claim. The judge further noted that the evidence presented by the parties at trial was of “equal quality and weight”; and, therefore, there was insufficient proof indicating fault of Floor Works. For the reasons stated herein, we affirm.

FACTS

The Lewises are homeowners in Ouachi-ta Parish who, on April 27, 2005, contracted with Floor Works to upgrade their kitchen and install wood flooring in their home. The work was completed by Floor Works in May 2005 and by the end of May 2005, the Lewises had paid Floor Works $11,387.67 in accordance with their original agreement and an additional $302 to cover the unexpected cost of removing tile underneath the old flooring.
To complete the job, Floor Works first removed the old laminated wood floors *1009 where they found vinyl tile underneath. They then removed the vinyl tile, which revealed a concrete sub-floor. A compound was then spread to level the floor. Dark wood flooring was then installed. The Lewises were initially pleased with the results after the job had been completed by Floor Works.
12Three months later, however, Ms. Lewis noticed a dark spot in the middle of the den floor “about the size of a hockey puck,” which began to increase in size as time passed. Mr. Lewis called Floor Works and spoke to its manager, Lewis Lyles, who subsequently came to the home and tested the floor with a meter. Mr. Lyles concluded that there was moisture in the floor and suggested that the Lewises call a plumber to check for leaks or breakage in the plumbing. The Lewises called Dennis Craft, a plumber from “Mr. Rooter,” who checked the plumbing in the home, but found no leaks. During this time, more spots began to appear in the home throughout the dining room, the den and the hallway. By the date of the trial, some areas in the flooring were completely black, others were molded and, in some places, the wood flooring had buckled.
As previously stated, the Lewises then filed this suit to recover costs to replace the flooring. They also claimed punitive damages of $45,000 for violations of the Unfair Trade Practices Act, along with court costs and attorney fees. Floor Works contended, however, that the work was performed in a good workmanlike manner and in accordance with standard industry practices. According to Floor Works, there is little doubt that the Lew-ises’ wood flooring had severe problems, but asserted that the problems were not caused by Floor Works.
A bench trial was held on the merits on June 30 and July 1, 2008, after which the trial judge denied the Lewises’ claims, ruling that the Lewises failed to carry their burden of proving poor workmanship on the Lpart of Floor Works. The Lewises then filed a Motion for New Trial, which was denied by the trial court.
The Lewises then brought this appeal.

DISCUSSION

On review, an appellate court may not set aside the findings of fact by the trial court unless those findings are clearly wrong or manifestly erroneous. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the fact finder’s conclusion was reasonable. Stobart, supra.
In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart, supra. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270.
Where the fact finder’s conclusions are based on determinations regarding the credibility of a witness, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware [4of the variations in demean- or and tone of voice that bear so heavily on the listener’s understanding and belief in *1010 what is said. Rosell, supra. With regard to decisions of law, however, a trial court’s ruling is subject to de novo review. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90.
According to La. C.C. art. 2769, “[I]f an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.” Additionally, La. C.C. art.1994 states that “[A]n obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance.”
A contractor is obligated to perform the work in a good and workmanlike manner so that the work is suitable for its intended purpose and free from defects in material and workmanship. Cascio v. Henry Hayes Carpet, 42,653 (La.App.2d Cir.10/24/07), 968 So.2d 844; Mount Mariah Baptist Church v. Pannell’s Associated Electric, Inc., 36,361 (La.App.2d Cir.12/20/02), 835 So.2d 880, writ denied, 03-0555 (La.5/2/03), 842 So.2d 1101. To establish the contractor’s liability for damages due to defective workmanship, the owner must prove: (1) the existence and nature of the defects, (2) that the defects are due to faulty materials or workmanship and (3) the cost of repairing the defects. Regions Bank v. Ark-La-Tex Water Gardens, L.L.C., 43,604 (La.App.2d Cir.11/5/08), 997 So.2d 734, writ denied, 09-0016 (La.3/13/09), 5 So.3d 119; Brown v. Brian Riley Bar Transport, L.L.C., 43,326 (La.App.2d Cir.6/11/08), 986 So.2d 901; Cascio, supra; Mount Manah Baptist Church, supra.
The plaintiff has the burden of proving each element of his claim by a preponderance of the evidence. Regions Bank, supra; Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Memorial Trust, 32,048 (La.App.2d Cir.8/20/99), 751 So.2d 928, writs denied, 99-2948, 99-2958 (La.12/17/99), 752 So.2d 166. If the owner meets the burden of proof, the remedy is to reduce the contract price in an amount necessary to complete the work or to correct the defective work according to the terms of the contract. Cascio, supra; Mount Mariah Baptist Church, supra.
In their first assignment of error, the Lewises contend that the trial court erred in finding that they failed to carry their burden of proof in establishing poor workmanship on the part of Floor Works. A review of the record reveals that experts for Plaintiffs and Defendant agreed that excessive moisture created the problems and damage to the wood flooring in the Lewises’ home. There is no evidence in the record, however, indicating what caused, created or led to the excessive moisture beneath the wood flooring which caused the damage.
During the trial, the Lewises’ expert, Ronnie Mayon of Coastal Flooring Inspector, Inc., testified that he identified the moisture problem in the wood flooring, but he stated that he could not identify the exact cause of the problem. Specifically, Mr. Mayon explained that he tested the wood in the Lewises’ home and determined that the problem was moisture in the | ficoncrete sub-floor; but, because he was not an engineer and it was not his field of expertise, he had no way of determining what caused the moisture in the concrete sub-floor. Additionally, as Floor Works points out, Mr. Mayon testified that the excessive moisture problem could have been the result of several different possible causes, including the dishwasher, faulty plumbing, busted drain pipes or broken sewer pipes, none of which related to Floor Works’ materials or workmanship.
*1011 Floor Works also submitted the testimony of its manager, Mr. Lyles, who has significant experience in the flooring business, specifically restoration and repair. Mr. Lyles testified that he randomly tested the moisture content of the Lewises’ floor during the installation of the floors by Floor Works, but he did not detect excessive moisture at that time. Mr. Lyles also stated that he had determined that, prior to the installation of the wood flooring, based on the results of the moisture reading test, there was no need for a moisture barrier underneath the wood flooring.
Mr. Lyles further testified that he had an incentive to detect the valid need for a moisture barrier underneath prospective customers’ flooring because he would be able to charge more for the extra work required to lay the moisture barrier to complete the job. Mr. Lyles also stated that laying moisture barriers, when appropriate to do so, helped maintain his business in good standing and prevent law suits. Finally, Mr. Lyles testified that, given the amount of moisture underneath the Lewises’ flooring, a moisture barrier would not likely have sufficed to prevent the damage, as a more |7drastic measure would have been required to counteract such an excessive amount of moisture.
Another witness for the Lewises, Mr. Richard L. Crawford, a licensed plumber and the owner of Rooter Plumbing, testified that one of his employees, Dennis Craft, examined the Lewises’ flooring and determined the presence of a water leak somewhere beneath the surface. Mr. Crawford further stated, however, that his company was not able to determine the cause of the water leak or moisture in the flooring. Mr. Crawford conceded that the presence of moisture in the flooring could have been caused by a number of factors including ground water or sewer lines.
Mr. Mickey Ford, a former employee of Bob Moss Carpet One, also testified for the Lewises. Mr. Ford indicated that his testing revealed moisture underneath the flooring in the Lewises’ home. Mr. Ford did not, however, draw any affirmative conclusions as to the cause of the moisture. Additionally, Mr. Ford explained that the presence of moisture at a later date did not mean that the moisture was present during the installation of the floors by Floor Works.
It is clear from the record that all parties agreed on the existence and nature of the problems in the Lewises’ floors, ie., excessive moisture underneath the wood flooring. As stated in the trial judge’s reasons for judgment, however, an essential element of the Lewises’ claim is the ability to show causation, ie., that the problems in their flooring were caused by the faulty materials or poor workmanship of Floor Works. Our review of the record and the witness testimony in this case reveals that the Lewises failed to prove this essential element of their claim. Accordingly, we find no manifest error in the trial judge’s ruling that the Lewises | ^failed to carry their burden of proof in this case. This assignment of error is without merit. In their second assignment of error, the Lewises contend that the trial judge erred in placing the burden of proof on the Lewises to show the poor workmanship of Floor Works. The basis of the Lewises’ argument in this assignment is that the burden shifted to Floor Works to overcome the evidence put forward by the Lewises after they established their prima facie case. As previously stated in our discussion of Plaintiffs’ first assignment of error, the Lewises did not adequately establish their prima facie ease; and, therefore, we pretermit any discussion regarding shifting the burden of proof to Floor Works.
*1012 In their third and final assignment of error, the Lewises complain that the trial judge erred in failing to admit into evidence testimony regarding the estimated costs of replacing the damaged flooring. We pretermit any discussion of damages in this assignment of error given our previous determination that the Lewises failed to carry their burden of proof with regard to causation.

CONCLUSION

For the foregoing reasons, the judgment of the trial court denying the Lewises’ claims for damages based on breach of contract is affirmed. Costs of this appeal are assessed to Clifton and Alverne Lewis.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, PEATROSS, DREW & LOLLEY, JJ.
Rehearing denied.