PITMAN, J.
| Appellant, Joe Weaver, d/b/a Weaver’s Roofing, appeals the trial court’s judgment in favor of Appellee, Belinda Storey, awarding her damages for breach of contract. For the following reasons, we affirm.
FACTS
On August 26, 2009, Mr. Weaver and Ms. Storey, the owner of a strip mall, entered into a contract stating that Weaver’s Roofing would restore the roof of the building for $12,500.
On November 15, 2010, Ms. Storey filed a petition for breach of contract and damages, alleging that Mr. Weaver did not satisfactorily install a flat roof on the building in that it leaked because Mr. Weaver did not use “good quality materials” and did not “install and restore the roof in a workmanlike manner.” Ms. Sto-rey requested costs of $20,000 to properly restore the roof and compensatory damages for the damage done to the interior of the building as a result of the defective roof.
A bench trial was held on March 28, 2013. Mr. Weaver testified that he owns a roofing business and has been roofing for 28 years. He explained he and Ms. Storey entered into a written contract in which they agreed that he would restore the roof on a building owned by Ms. Storey by removing and replacing the roof on the part of the building that housed a tattoo parlor and by installing a rubber coating on the rest of the building’s roof. Mr. Weaver explained that he applied a rubber roof on the tattoo parlor and that on the main building’s roof, he removed the existing gravel, power washed the roof, let the roof dry and then put down new asphalt and gravel. He testified that he gave Ms. Storey a one-year workmanship warranty. Several months after he finished the roofing job, however, he received a call | «.about a leak in the tattoo parlor, and he fixed the leak. Mr. Weaver further testified that he also received a call from another tenant complaining of a leak in the Terminix store. Upon examination, he discovered that the leak was not coming from the roof, but from cracks in the brick parapet wall, so he did not make any repairs to the roof. Mr. Weaver stated that he advised Ms. Storey about how to seal the bricks to stop the leak and also gave her a price for replacing ceiling tiles.
Ms. Storey testified that she owned a strip mall that housed three tenants in the main building, i.e., Terminix, a beauty shop and a 99 Cents Store, and a tattoo parlor in an attached building. She explained that the roofs of the tattoo parlor and the main building leaked often; so, after receiving bids from three roofers, she chose Mr. Weaver’s bid of $12,500. She testified that Mr. Weaver was to install a 10-year roof on the main building with asphalt over the existing tar and gravel roof and install a 15-year rubber roof on the tattoo parlor. She stated that, following completion of the roofing job, she received reports from all four tenants of the building concerning leaks and was advised by the tenants that they had also contacted Mr. Weaver. Ms. *1082 Storey also stated that she contacted another roofer, Tim Ashton, to examine the roof and that Mr. Ashton informed her that no work had been done on the main building and that only the roof of the tattoo parlor had been replaced. Ms. Sto-rey then hired Mr. Ashton to patch the roof for $2,950. She stated that she contacted a third roofer, Mr. Speer, to examine the roof and he confirmed that it appeared the roof of the tattoo parlor had been replaced, but that no work had been done on the main building except the patch work performed by Mr. |sAshton. She explained that the roof continued to leak, so she hired Edward Coleman of Roof Recovery and Restoration to replace the roof of the main building (not including the tattoo parlor) for $19,622. She testified that there have been no leaks since Mr. Coleman replaced the roof. She further testified that she believes Mr. Weaver did not fulfill their contract and did not install the roof in a workmanlike manner.
Ricky Miller testified that he worked with Mr. Weaver on repairing the roof and detailed that they “pulled the gravel back, power washed all the sand and ... dirt.... Retarred the whole roof and put the gravel back.” He explained that once the roof was repaired it looked “[l]ike nothing ever happened” to the roof.
Following the trial, the trial court stated that the record would remain open until May 31, 2013, in order that depositions could be filed. The depositions of Edward Coleman and Peggy Herman were subsequently filed in the record on June 4, 2013.
In his deposition, Mr. Coleman testified that he has been in the commercial roofing business for 11 years and that he was contacted by Ms. Storey about reroofing a building. He stated that he examined the roof and noted that it was “an extremely aged roof that had a couple of small areas where it had been patched.” He also stated. that the roof of the tattoo parlor appeared to have been repaired, but that the roof of the main building had not been completely repaired. He further stated that he reroofed the entire roof, except for a portion that had a “rolled roofing type of roof’ on it. He opined that, if Mr. Weaver had completely reroofed the entire building, his (Mr. Coleman’s) services would not have been necessary.
|4Ms. Herman testified in her deposition that she leased a space in the building and that the roof of her beauty shop leaked when it rained. She stated she did not see Mr. Weaver replace the roof of the entire building and that the roof continued to leak after it was allegedly replaced. She explained that Ms. Storey hired Mr. Ash-ton to repair the roof and then hired Mr. Coleman to replace the roof, and it was only after Mr. Coleman replaced the roof that the leaks stopped.
In its opinion of June 21, 2013, the trial court found that Mr. Weaver is liable for damages for his failure to perform his obligation under the contract with Ms. Sto-rey. It stated that Mr. Weaver’s “failure to perform resulted from both his nonperformance and defective performance.” The trial court assessed damages in favor of Ms. Storey for the $12,465.45 that she paid to Mr. Weaver for performance of the obligation that he failed to perform, plus legal interest from the date of demand and court costs. A judgment was filed on July 1, 2013.
Mr. Weaver appeals the judgment of the trial court.
DISCUSSION

Consideration of Depositions

In his first assignment of error, Mr. Weaver argues that the trial court erred in considering the deposition testimony of Mr. Coleman and Ms. Herman. Mr. Weaver contends that the depositions were *1083 not timely filed because the record was held open only until May 31, 2013, but the depositions were not filed until June 4, 2013. He also alleges that the record remained open only for the purpose of filing Mr. Coleman’s deposition.
Ms. Storey argues that the trial court did not commit reversible error [ fiin considering the deposition of Mr. Coleman. She notes that the trial court granted counsel 60 days to take his deposition because there had been difficulty in serving Mr. Coleman and that his deposition was taken within the 60-day period. Ms. Storey also contends that proper notice of Ms. Herman’s deposition was filed on April 17, 2013, that Mr. Weaver was served with that notice and that he did not object.
The decision to hold open a case for the production of additional evidence rests within the discretion of the trial judge, and this decision will not be disturbed on appeal unless manifestly erroneous. La. C.C.P. arts. 1631 and 1632; Harris v. West Carroll Parish Sch. Bd., 605 So.2d 610 (La.App. 2d Cir.1992), writ denied, 609 So.2d 255 (La.1992).
The trial court acted within its discretion to hold the case open for the filing of the deposition of Mr. Coleman and to consider depositions filed after the deadline set by the trial court. The trial court’s action to consider the depositions of Mr. Coleman and Ms. Herman was not manifestly erroneous. Furthermore, Mr. Weaver did not contemporaneously object to the filing of Ms. Herman’s deposition and therefore waived his right to complain on appeal. See Harris, supra, citing State v. Keltner, 542 So.2d 42 (La.App. 2d Cir.1989), writ denied, 548 So.2d 1228 (La.1989).
Accordingly, this assignment of error is without merit.

Nonperformance/Defective Performance

In his second assignment of error, Mr. Weaver argues that the trial court erred in finding that he failed to perform his obligation under the contract by virtue of nonperformance and defective performance and that Ms. Storey did not meet her burden of proof. Mr. Weaver alleges that he |fiperformed all of the actions itemized in the contract and that he performed them in a workmanlike manner according to standard practice. He also argues that the leak in the Terminix store stemmed from a crack in a brick parapet wall that is not part of the roof and was not contemplated in the contract.
Ms. Storey argues that the trial court’s finding of fact is supported by her testimony and Mr. Coleman’s testimony that little or no work had been done on the roof and that the roof continued to leak.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lewis v. La Adrienne, Inc., 44,602 (La.App.2d Cir.8/19/09), 17 So.3d 1007. An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the finder of fact’s conclusion was reasonable. Id., citing Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993). A court of appeal must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Id., citing Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270.
La. C.C. art. 2769 states as follows:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may en *1084 sue from his non-compliance with his contract.
La. C.C. art.1994 states as follows:
An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results 17from nonperformance, defective performance, or delay in performance.
A contractor is obligated to perform the work in a good and workmanlike manner so that the work is suitable for its intended purpose and free from defects in material and workmanship. Lewis, supra; Cascio v. Carpet, 42,653 (La.App.2d Cir.10/24/07), 968 So.2d 844; Mount Mariah Baptist Church v. Pannell’s Associated Elec., Inc., 36,361 (La.App.2d Cir.12/20/02), 835 So.2d 880, writ denied, 03-0555 (La.5/2/03), 842 So.2d 1101. To establish the contractor’s liability for damages due to defective workmanship, the owner must prove, by a preponderance of the evidence, the existence and nature of the defects, that the defects are due to faulty materials or workmanship and the cost of repairing the defects. Lewis, supra; Cascio, supra; Mount Mariah, supra.
The evidence presented at trial and in the depositions supports the trial court’s finding that Mr. Weaver, d/b/a Weaver’s Roofing, failed to perform the contract. The testimony of Mr. Weaver, Ms. Storey and Ms. Herman demonstrate that the roof of the building continued to leak after Mr. Weaver allegedly replaced it. The testimony of Mr. Coleman and of Ms. Sto-rey suggests that, although the roof of the tattoo parlor was replaced, the roof of the main building had not been replaced. Ms. Storey also testified that she paid Mr. Ashton $2,950 to patch the roof of the main building and paid Mr. Coleman $19,622 to replace the roof of the main building.
The trial court’s finding that Mr. Weaver failed to perform the contract because of nonperformance and defective performance is not manifestly erroneous. Accordingly, this assignment of error lacks merit.
| ¡¡Damages for Breach of Contract
In his third assignment of error, Mr. Weaver argues that the trial court abused its discretion in the amount of damages awarded for the breach of contract. Mr. Weaver states that Ms. Storey was awarded the full contract amount, but that this award of damages should be reduced. Mr. Weaver contends that there is no dispute that Mr. Weaver replaced the roof on the tattoo parlor and that Mr. Coleman did not replace that roof, so he should be given credit for the work he completed on that portion of the building. Mr. Weaver further argues that the leak was not the result of his nonperformance, but was the result of a crack in the brick parapet wall.
Ms. Storey contends that the trial court did not err when awarding damages because she had to hire a second roofer to repair the work performed by Mr. Weaver and a third roofer to install the roof that Mr. Weaver was hired to install.
The standard for reviewing the award of damages for breach of contract is whether the trial court abused its discretion. Mount Mariah, supra, citing Hernandez v. Martinez, 00-1282 (La.App.5th Cir.2/28/01), 781 So.2d 815. If the plaintiff in a breach of contract case meets the burden of proof, the remedy is to reduce the contract price in an amount necessary to complete the work or to correct the defective work according to the terms of the contract. Lewis, supra; Cascio, supra; Mount Mariah Baptist Church, supra. However, a contractor may still recover part of the contract price, notwithstanding defects, when substantial performance is shown. Cascio, supra; Mount Mariah, supra. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable *1085 ^assessment of these damages. La. C.C. art. 1999.
When awarding damages, the trial court considered the contract price and the work necessary to correct the defective work. The trial court noted that “the amount of damages should [not] be the amount paid to Mr. Coleman because it appears that the roof he installed ... was different from what [Mr. Weaver] contracted to install.” The trial court also considered that Mr. Weaver may be entitled to credit because substantial performance was shown in that he did replace the roof of the tattoo parlor. The trial court noted that no evidence was presented as to the value of that credit and, therefore, found that any credit Mr. Weaver may have been entitled to was offset by the payment made to Mr. Ashton to repair the work that Mr. Weaver was contracted to perform.
We do not find that the trial court abused its discretion when awarding damages in this case. Accordingly, this assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Belinda Storey and against Joe Weaver, d/b/a Weaver’s Roofing, is affirmed. Costs of appeal are assessed to Joe Weaver, d/b/a Weaver’s Roofing.
AFFIRMED.