PITMAN, J.
| j Plaintiff, Mary Burnes, appeals the judgment of the trial court in favor of Defendant, Caddo Parish School Board, which found that a wooden doorstop did not create an unreasonable risk of harm and was not the cause-in-fact of Plaintiffs trip and fall and which dismissed her suit. For the following reasons, we affirm.

FACTS

On June 3, 2008, Plaintiff went to the Donnie Bickham Middle School Student Center to attend a meeting regarding the Haynesville Shale discovery. Defendant owns and operates the school and allows outside groups to use the campus for vari *272 ous activities. As Plaintiff and her daughter, Mary Elizabeth Flores, arrived at the center, there were four doors through which they could enter. The women tried to open the three doors to the right (doors number two, three and four), but they were locked. A custodian, Johnny Grant, was working inside the building. He saw them through the doors, which were glass on the top, and pointed to the only door they had not tried to open as the one they should come through (door number one, which would have been located on their far left). As Plaintiff stepped from door number two to door number one, she fell.
Plaintiff claimed she tripped on a wooden doorstop bolted to the cement floor between the locked door and the unlocked one. She was taken by EMS to Willis-Knighton Bossier Hospital (“WK Hospital”). X-rays revealed that she had a sub-capital femoral neck fracture to her left hip. She had endoprosthetic hip replacement surgery on June 4, 2008. On April 9, 2009, she underwent a total hip replacement. On September 28, 2011, | ^Plaintiff underwent another surgery to repair a preexisting back condition, which she claimed had been aggravated or exacerbated by her fall at the school.
Plaintiff filed suit against Defendant, alleging that it was liable to her for her injuries pursuant to La. R.S. 9:2800, which provides that a public entity is responsible under La. C.C. art. 2317 for damages caused by the condition of buildings within its care and custody. At trial, Plaintiff and her daughter testified regarding the facts above and also testified that Plaintiff has a history of medical problems including diabetes, loss of vision due to diabetic retinopathy, cataracts and a blind spot in the center of her vision in her right eye. Plaintiff also had back pain which preceded her accident at the school and for which she obtained a handicapped license plate in March 2007 to reduce the distance she would have to walk from her car to her place of work as manager of a General Nutrition Center.
Plaintiff testified regarding her injuries in the accident, and her attorney pointed out that the medical records from WK Hospital indicated in four separate places that her fall occurred at her home, rather than at the school. She and her daughter both testified that they could not explain why medical personnel at the hospital would write that in her record, since she had not fallen at her home, and, in fact, had fallen only twice in her life, decades before the accident at the school.
Custodian Grant testified that, after he motioned to the women to use door number one, he saw Plaintiff fall. He stated that he could not see ^whether she had tripped on the doorstop since he could see her only from the waist up through the glass in the upper portion of the door.
Cleo Shirley, a cafeteria employee at the school, testified that she had fallen over the wooden doorstop between doors number three and four in 2007, injuring her wrist, but stated that she considered' the fall her own fault because she was in a hurry and was not paying attention.
The record was left open for Plaintiffs safety expert, Dennis Howard, to testify by deposition. Mr. Howard’s deposition was subsequently submitted into evidence, but he did not indicate that Defendant had violated any governmental regulations concerning doorstops, nor did he testify that any standard concerning doorstops had been violated.
The principal of the school, Shannon Wall, testified for the defense and stated that the school is often used by different civic groups for meetings, pageants and sports activities and that these events are not held at any profit to the school. Mr. *273 Wall further testified that no one had ever complained that the wooden doorstops constituted a safety hazard. He stated that there is a very high volume of traffic through the doors with approximately 700 children passing through them multiple times per day, and there have never been any accidents reported by the students. Mr. Wall testified that the purpose of the wooden doorstops was to prevent a door from being thrown open and striking the face of the person entering or exiting the door next to it. When questioned by the trial court, Mr. Wall confirmed that the doors and doorstops were still in the same condition as they were on the day of the accident.
| ^ Kenneth Cochran was the first principal at the school when it was built in 1988. He testified that the original design of the student center called for two metal stops to be bolted to the concrete walkway, one between doors one and two, and the other between doors three and four. Because the metal stops had sharp edges and were positioned in the area of highest pedestrian traffic, Mr. Cochran was concerned about student safety in the event a student should fall on the metal stops. He testified that it was for that reason, in the first year of operation of the school, after a discussion with Risk Management Director Dewight Collier, that the metal stops were replaced with beveled brown wooden stops that were much larger than the metal ones. They were placed in the same location as the metal stops. Mr. Cochran testified that he did not recall any student being injured by the wooden stops in the 13½ years he served as principal.
After the evidence was presented, the trial court made a site visit to the school to view the scene of the accident. After analyzing the evidence and considering the deposition testimony of Plaintiffs safety expert and the post-trial memoranda filed by both parties, the trial court found that, while Plaintiff and her daughter testified that Plaintiff tripped over the wooden doorstop, the WK Hospital reports (where Plaintiff was taken after the accident) made no mention of the fall at the school. Instead, the hospital reports state that Plaintiff fell at home. The trial court also noted that custodian Grant was inside the school and could not see Plaintiffs lower body as she fell and could not know if she tripped over the wooden doorstop since his view was limited to the upper glass portion of the door.
IsThe trial court’s opinion stated that it did not find Plaintiff or her daughter to be credible witnesses for several reasons, including that it found their testimony to be evasive and inconsistent. The trial court also opined that its decision was based not only on their answers, but also on their demeanor while testifying. It pointed out that Plaintiff has a history of mobility difficulties and vision problems. Plaintiff was scheduled to have eye surgery the week she fell at the school because of a cataract in her left eye, cloudiness in her vision and a blind spot in her right eye. She also had retinopathy in both eyes caused by diabetes. The trial court further noted that both Plaintiff and her daughter had a considerable financial interest in this case since Plaintiffs social security check was the only income for the two of them and Ms. Flores’ two children.
Based on the evidence presented at trial, the trial court found that Plaintiff had not proven that the wooden doorstop created an unreasonable risk of harm or that it was the cause-in-fact of her injuries. It also found that Plaintiff failed to prove Defendant had actual or constructive knowledge of the condition, yet failed to take corrective action within a reasonable period of time, and denied Plaintiff relief, *274 dismissing her suit with prejudice. Plaintiff appeals.

DISCUSSION

Plaintiff raised many assignments of error with regard to the trial court’s judgment.[1] A threshold issue argued by Plaintiff is that the trial |ficourt committed manifest error in holding that the doorstop did not create an unreasonably dangerous condition. Plaintiff asserts that the trial court rejected the testimony of the only safety expert to testify on the basis that the trial court lacked belief in the Plaintiffs veracity with regard to the fact that she actually tripped and sustained her injury at the school.
Defendant argues that the trial court specifically set out the reasons why it concluded that the testimony of Plaintiff and her daughter was not credible. Defendant claims the evidence in the record was sufficient for the trial court to find that their testimony was untrustworthy. For these reasons, Defendant argues that the trial court’s decision was reasonable and based on the evidence presented at trial.
Defendant also argues that the trial court’s finding that the wooden doorstop did not create an unreasonable risk of harm is subject to the manifest error standard of review and that the trial court is vested with great discretion in its fact findings. Further, Defendant argues that it is within the trial court’s purview to accept or reject the testimony of any witness based on its credibility determinations and that the trial court was reasonable in rejecting Plaintiffs arguments to the contrary because it had found that Plaintiff had not proven that she actually tripped on the wooden doorstop. Defendant contends that, once the trial court concluded that the doorstop did not constitute a legal defect, Plaintiff could never prove the element of notice because that element requires there be a defect about which to have notice.
|7La. R.S. 9:2800 concerns a public entity’s limitation of liability and states in pertinent part as follows:'
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
[[Image here]]
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2817 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
To recover against a public entity for damages due to a defective thing, the plaintiff must prove that: (1) the thing which caused damage was in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity *275 had actual or constructive notice of the condition, yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of plaintiffs harm. Failure to meet any one statutory element will defeat a negligence claim against a public entity for damages caused by a condition of things within its care and custody. To prove constructive notice, as required for a public entity to be liable for damages caused by a condition of things in its care, the plaintiff must produce facts demonstrating that the defect existed for a sufficient period of time that it should have been discovered and repaired if the public entity had exercised reasonable | ^diligence. Benson v. State, 48,300 (La.App.2d Cir. 10/9/13), 124 So.3d 544.
Analysis of whether a thing under the care and custody of a public entity was defective due to a condition that created an unreasonable risk of harm, which must be shown to establish a claim against the public entity for damages caused by the condition of the thing, requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing’s social value and utility and the cost and feasibility of repairing the defect. Ricks v. City of Shreveport, 42,675 (La.App.2d Cir.10/24/07), 968 So.2d 863.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. When a trial court’s or jury’s findings are based on determinations regarding the credibility of witnesses, the “manifest error-clearly wrong” standard demands great deference to the trier of fact’s findings; only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.9/12/89).
|flIn order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Lewis v. La Adrienne, Inc., 44,602 (La. App.2d Cir.8/19/09), 17 So.3d 1007.
In the case at bar, the trial court specifically found that the wooden doorstop over which Plaintiff allegedly tripped was located on the premises of Donnie Bickham Middle School and that Plaintiff had met her burden of proof as to that element of her claim. The trial court then addressed the issue of whether the doorstop was defective due to a condition that created an unreasonable risk of harm and noted that it had to balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility and the cost and feasibility of repair.
In determining whether the doorstops created an unreasonable risk of harm, the trial court traveled to the site and observed them in person, noting their color and visibility first-hand. After correctly applying the balancing test to the facts of the case and taking into consideration the serious safety hazards presented by hun *276 dreds of students entering and exiting the doors several times each school day, that only two accidents had occurred there since 1988, and weighing those facts with individual societal rights, the trial court concluded that the doorstops did not create an unreasonable risk of | inharm. Since only one other adult since 1988 had had an accident as a result of the doorstops placed at that particular set of doors, and that person admitted she believed the accident was her own fault, and since no children have reported accidents there, we agree with the trial court that the wooden doorstops do not create an unreasonable risk of harm. The social utility and need for the doorstops outweigh the risk of harm to a reasonably prudent person moving from one door to the other.
Applying the standard of manifest error, we find that the trial court based its decision on reasonable inferences of fact with regard to the issue of whether the doorstops created an unreasonable risk of harm. It clearly explained the reasons for its findings, and its decision should not be disturbed upon review. Accordingly, we find Plaintiffs assignment of error with regard to the unreasonable risk of harm presented by the wooden doorstop to be without merit.
In agreeing with the trial court’s determination that the wooden doorstops did not create an unreasonable risk of harm, we find that Plaintiff failed to meet her burden of proof with regard to an essential element of her claim. Her failure to meet any one statutory element defeats her negligence claim against Defendant for damages caused by a condition of things within its care and custody. For this reason, we pretermit discussion of the other issues raised on appeal, including whether Defendant had actual or constructive notice of the condition, yet failed to take corrective action within a reasonable period of time, and whether the doorstop was the cause-in-fact of Plaintiffs harm. Without a finding that the doorstop created an | n unreasonable risk of harm, there is no condition about which Defendant should have had actual or constructive notice or to which corrective action should have been taken.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in favor of Defendant, Caddo Parish School Board and against Plaintiff, Mary Burnes. Costs of this appeal are assessed to Plaintiff, Mary Burnes.
AFFIRMED.

. Plaintiff claims that the trial court erred as a matter of law in holding that she failed to meet her burden of proving that Defendant had actual notice of the unreasonably dangerous condition that caused her injuries. Plaintiff also argues that the trial court committed manifest error in interpreting the facts to hold that the doorstop was not the cause-in-fact of her injuries. She further contends that the trial court made other errors of law and in its finding of facts with regard to comparative fault and failure to award damages to her.