LOLLEY, J.
| plaintiff, Carroll Insulation & Window Co., Inc., and Defendants, Biomax Spray Foam Insulation, LLC and Matt' Taylor, both appeal a judgment of the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana. For the following reasons, we affirm the trial court’s judgment.
Facts
This appeal involves the construction of a Chicken Express restaurant on South Barksdale Boulevard in Bossier City, Louisiana (the “Project”). Moser Construction Co. was the general contractor (“Moser”). The insulation work for the Project had been subcontracted out by Moser to Carroll Insulation & Window Co., Inc. (“Carroll Insulation”), a company owned by Richard Carroll (“Carroll”). The original plans for the Project called for fiberglass batt insulation, but at some point Moser and Carroll decided to change the insulation plan from fiberglass to spray foam. Carroll Insulation did not provide spray foam insulation; thus Carroll contacted Matt Taylor, the owner of Biomax Spray Foam Insulation, LLC (“Biomax”), and asked for an estimate' to provide spray foam insulation on the Project.
On September 15, 2011, Biomax supplied Carroll Insulation with an estimate of $10,185.25 to supply the following:
MAIN AREA FOAM PACKAGE:
Roof Line-Apply 5 inch (nominal) of Ga-coFireStop
Pony Walls-Apply 4 inch (nominal) of GacoFireStop
Exterior Walls-Apply 5 inch (nominal) of open cell spray foam insulation
MAIN AREA FOAM PACKAGE TOTAL: $10,185.25 (Package is included in total).
19,0n October 13, 2011, Biomax provided Carroll Insulation a proposal totaling $10,185.34, which included the following:
[[Image here]]
As stated, at the time the estimate and proposal were provided by Biomax, the Project plans did not call for spray foam insulation. After the work was completed, the plans were amended to reflect this change. Biomax performed its work on the Project, installing spray foam to the building. Taylor testified at trial that Bio-max initially sprayed a basic foam insulation without an ignition barrier, Gaco Green, pursuant to a discussion with Carroll. When the work was completed, Carroll Insulation paid Biomax in full.
Upon completion of the insulation work, the Bossier City Chief of Fire Prevention, Jerry Nuckolls, was called to inspect the Project. As he testified at trial, Chief Nuckolls initially was surprised to see that the Project had been insulated using spray foam rather than fiberglass batt, because the original plans did not specify spray foam and had not been amended to his knowledge. As explained by Chief Nuc-kolls at trial, the open cell spray foam insulation applied by Biomax (i.e., the Gaco Green) was sufficient as long as it was covered by an additional ignition barrier. *522 However, without that additional ignition barrier, Chief Nuckolls rejected the insulation as applied, because it did not conform with the city fee code requirements. Thus, Biomax returned to the Project in an attempt to comply with the code | .¡requirements and sprayed an additional ignition barrier layer using a product called Bayseal. When Chief Nuckolls returned for his reinspection, he testified that he could visually detect that the ignition barrier was deficient and did not meet the requirements for nominal coverage, because he could see the initial spray foam layer (which was green) through the ignition barrier.
After Chief Nuckolls’ second inspection, Biomax agreed to return to the Project on December 3, 2011, in an attempt to bring the ignition barrier coverage up to the required standards. According to Carroll Insulation, the parties agreed that the product to be applied was DC-315. No one from Biomax appeared to work ■ on December 3, but the next day two Biomax employees showed up with 5-gallon buckets containing a product purporting to be DC-315. The men were in the process of applying the foam insulation product when Denise Jones, Carroll Insulation’s office manager, appeared., at the Project. The testimony at trial indicates that she and Taylor got into a disagreement over the method of application, and the Biomax employees left the job site, leaving the buckets behind. Ultimately, Carroll Insulation hired Garland Insulating to complete the application of the ignition barrier insulation at an additional expense to Carroli Insulation.
Carroll Insulation feed a breach of contract and unfair and deceptive trade practices action against Biomax and Taylor, maintaining that in addition to a breach of contract between the parties, Biomax and Taylor were liable for treble damages and attorneys fees pursuant to La. R.S. 51:1401, the Louisiana Unfair Trade Practices and Consumer Protection |4Law (“LUTPA”). Biomax and Taylor answered and filed a reconventional demand, also making claims under LUTPA. After a two-day trial, the trial court took the matter under advisement, ultimately rejecting Carroll Insulation’s LUTPA claim but finding that a breach of contract had occurred. Carroll Insulation was awarded a variety of damages and attorneys fees, and Biomax and Taylor filed a motion for new trial. After argument on fee motion, the trial court amended its original judgment retracting the award of attorneys fees to Carroll Insulation, but preserving the rest of the original judgment. Carroll Insulation filed the initial motion for appeal, which was granted. Biomax and Taylor also appeal.
Discussion

Standard of Review

A court, of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lewis v. La Adrienne, Inc., 44,602 (La.App.2d Cir.08/19/09), 17 So.3d 1007. An appellate court must not base its determination on whether it considers the trier of fact’s conclusion to be right or wrong, but on whether the finder of fact’s conclusion was reasonable. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). A court of appeal must not reweigh the evidence or substitute its ovim factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.04/03/02), 816 So.2d 270.
\ ¡Louisiana Unfair Trade Practices Act .
Here, the trial court rejected Carroll Insulation’s claim under LUTPA and *523 determined the dispute between ■ Carroll Insulation and Biomax and Taylor to be simply a breach of contract claim pursuant to La. C.C. art. 2769. On appeal, Carroll Insulation brings several assignments of error,- all stemming from its position that the trial court erred in excluding the LUT-PA claims and ruling on the dispute as a breach of contract claim. We agree with the trial court that LUTPA was not applicable to the claims brought by Carroll Insulation against Biomax and Taylor and conclude that Carroll Insulation’s assignments of error in this regard are without merit.
In this case, both parties made claims that the other violated LUTPA. Specifically, Carroll Insulation initially alleged that Biomax and Taylor lied about the products it applied and installed at the Project, and the “fraud and misrepresentations were unfair and deceptive ... made in the course of trade and commerce [.] ” In response, Biomax and Taylor brought their own claims under LUTPA against Carroll Insulation. Primarily, Biomax and Taylor maintained that they were entitled to attorney fees and costs, arguing that the claims made by Carroll Insulation under LUTPA were groundless and brought in bad' faith. They also made additional claims against Carroll Insulation under LUTPA, but those were ultimately withdrawn.
The trial court rejected the claims under LUTPA on procedural grounds, noting' in its opinion that:
the claim is defeated unless" the claimant can prove that they properly served the Director of Governor’s Consumer Protection Division or the Attorney General, and that the defendants were given the requisite notice that any continued [ fiuse and/or disclosure of the allegedly misappropriated- information would -subject -them to a claim -for treble -damages.
The .-trial court did not address the LUT-PA claims on a substantive basis. -
The Louisiana Supreme Court recently addressed the applicability of LUTPA in Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., 2013-1582 (La.05/07/14), 144 So.3d 1011, noting that:
In LUTPA, the legislature declared it to be unlawful to engage in “unfair methods of competition and unfair or decep- ' tive acts or practices in the conduct of any trade or commerce.” La.Rev.Stat. § 51:1405. Because of the broad sweep of this language, “Louisiana courts determine what is a LUTPA violation on a case-by-case' basis.” Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loy. L.Rev. 759, 762 (1996). This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that “the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.” Cheramie Services, Inc. v. Shell Deepwater Prod., 2009-1633, p. 11 (La.04/23/10), 35 So.3d 1053, 1059. “[T]he range of prohibited practices under LUTPA is extremely narrow,” as -LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere,-negligence. Id. at, 11, 35 So.3d at 1059; Andrews, 41 Loy., L.Rev. at 763. Moreover, conduct, that offends established public policy and is unethical is not necessarily a violation under LUTPA. See, e.g., Cheramie Services, 2009-1633 at 12, 35 So.3d at 1060. (“[Ojnly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.”); Vermilion Hosp., Inc. v. Patout, 2005-82, p. 6 (La. App. 3d Cir.06/08/05), 906 So.2d 688, 693.
*524 To sustain a cause of action under LUTPA, two things must be proved: (1) an ascertainable loss was suffered; and (2) the loss must result from another’s use of unfair methods of competition and unfair or deceptive acts or practices. Cheramie, supra. The statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of [7daylight between a breach of contract claim and the egregious behavior the statute proscribes. Hardy v. Easterling, 47,950 (La.App.2d Cir.04/10/13), 113 So.3d 1178, 1187, citing, Turner v. Purina Mills, Inc., 989 F.2d 1419 (5th Cir.1993).
Here, the trial court did not find specifically that Biomax or Taylor had acted unfairly or deceptively, necessary findings of fact in order to prevail in an action under LUTPA. As will be discussed further herein, Biomax did not fully comply with the claimed request of Carroll Insulation, which resulted in a breach of contract. However, all things considered, the conduct by Biomax and/or Taylor did not offend established public policy, nor was it immoral, unethical, oppressive, unscrupulous, or substantially injurious; that is, the actions by Biomax did not rise to the level of invoking LUTPA as a remedy.
It would appear from the outset that the parties were not entirely on the same page — which probably could have been prevented had the original plans set forth precisely the form of insulation to be used. After hearing the trial testimony, the trial court concluded that Carroll Insulation desired and instructed the use of DC-315 as the requisite ignition barrier. Although Biomax used Bayseal, a product different than the one called for by Carroll Insulation, Taylor maintained that the substituted product would achieve the same desired result as the requested product. Moreover, when Chief Nuckolls determined the work by Biomax to be deficient as to the fire code, it did attempt to mitigate the problem by returning to the Project to respray with the requested insulation product (although that ultimately did not | shappen). Because there was no explicit, written contract setting forth the agreement of the parties, the negotiation and instructions appear to have been somewhat fluid as the situation unfolded. Ultimately, the facts support the finding that this case does not rise to the level of a LUTPA claim. There is a “great deal of daylight” between Carroll Insulation’s allegations and the scope of unfair and deceptive conduct in trade and commerce that LUTPA was intended to proscribe. Although the trial court’s ultimate dismissal of the claims under LUTPA was not based on substantive reasoning, we agree with the result. Carroll Insulation’s assignments of error regarding its LUTPA claim have no merit — its complaints do not support an unfair trade practices claim,

Breach of Contract

In concluding that there was no basis for Carroll Insulation’s claims under LUTPA, the trial court determined that the cause of action was a breach of contract dispute governed by La. C.C. art. 2769. Carroll Insulation, Biomax, and Taylor all take issue with the trial court’s determination that this case involved a breach of contract between the parties. We agree with the trial court.
Louisiana C.C. art. 2769 states:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
A contractor is obligated to perform the work in a good and workmanlike manner so that the work is suitable for its intended purpose and free from defects in material *525 and workmanship. Lewis v. La Adrienne, Inc., supra; Cascio v. Carpet, 42,653 (La.App.2d Cir.10/24/07), 968 So.2d 844. To establish the contractor’s liability for damages due to defective workmanship, the owner must prove, by a preponderance of the evidence, (1) the existence and nature of the defects, (2) that the defects are due to faulty materials or workmanship, and (3) the cost of repairing the defects. Storey v. Weaver, 49,027 (La.App.2d Cir.05/14/14), 139 So.3d 1079, 1084. The evidence presented at trial supports the trial court’s finding that Biomax failed to perform as agreed by the parties, because the facts precisely fit the dictates of article 2769.
First, Carroll Insulation proved by a preponderance of the evidence the existence and nature of the defects regarding the foam insulation portion of the Project. When Chief Nuckolls inspected the application of the foam insulation, he rejected the application of the ignition barrier, noting what appeared to be gaps in the application and problems with the thickness— i.e., Chief Nuckolls identified the existence and nature of the defect in Biomax’s work. Without Chief Nuckolls’ approval, work on the rest of the Project could not proceed. On any construction project, the most basic requirement is that the workmanship be sufficient to obtain final approval by the inspector; thus Biomax and Taylor were obligated to perform the work so that it would be approved by Chief Nuckolls and pass the applicable city fire code requirements. Failure to so perform resulted in defective work.
Second, Carroll Insulation proved that the defects were due to faulty materials, because Biomax did not use the product that Carroll Insulation requested. Both the Biomax estimate and proposal specify the use of | inGacoFireStop; however, Taylor’s testimony at trial indicates a change was agreed to and Gaeo- Green would be applied — this product -did not contain an ignition barrier. After Chief Nuckolls rejected the single layer foam insulation, Biomax sprayed a subsequent ignition barrier over the green layer, using the Bay-seal product. This is where the problems arose. Carroll testified that he requested and expected the ignition barrier to be the product DC-315. Taylor testified that he chose to use Bayseal instead of DC-315, because it was less expensive (although it does not appear the cost advantage was passed on to the client). Significantly, Chief Nuckolls testified that he understood that the parties had agreed that DC-315 would be used. The trial court accepted the testimony of Carroll that he did not instruct Taylor to use Bayseal instead of DC-315, a credibility call which was within the factfinder’s discretion.
Finally, Biomax and Taylor were ultimately in breach of their agreement due to faulty workmanship. To the credit of Bio-max and Taylor, they initially attempted to remedy the failure to meet the code requirements noted by Chief Nuckolls. Bio-max returned to the Project to apply a third insulating coat-the DC-315. Had this attempted fix worked, perhaps Biomax and Taylor would not have breached the contract with Carroll Insulation. However, after a disagreement with Denise Jones on the jobsite, the Biomax employees abandoned the Project, resulting in a failure to complete the work Biomax had agreed to do. The faulty workmanship was never corrected by Biomax, and Carroll Insulating was forced to contract with Garland Insulating to complete the insulation work to the Project.
In Considering the evidence deduced at trial, the trial court’s conclusion that Bio-max and Taylor breached 'the agreement with Carroll Insulation because of nonperformance and defective performance is not *526 manifestly erroneous. The assignments of error by Carroll Insulation and the defendants are without merit.

Attorney fees

In another assignment of error, Carroll Insulation argues that the trial court erred- in failing to award attorney fees and other related awards. In its initial judgment, the trial court awarded Carroll Insulation attorney fees and costs incurred in connection with the litigation. Biomax and Taylor filed a motion for new trial arguing, among other things, that the trial court’s grant of attorney fees was not contractually or statutorily based, 'and they were entitled to a new trial pursuant to La. C.C.P. art.1972(1) and 1973. Carroll Insulation submits that the attorney fee award was not a proper basis for a new trial, and the trial" court erred in granting the motion and ultimately retracting the award. We disagree.
A new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art.1972(1); Chumley v. Magee, 44,860 (La.App.2d Cir.02/17/10), 33 So.3d 345, writ denied, 2010-1125 (La.09/17/10); 45 So.3d 1046. Under this article, a new trial should be ordered when the district court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Rivet v. State, Dept. of Transp. & Dev., 2001-0961 (La.11/28/01), 800 So.2d 777. Generally, new trials are granted in the interest of justice and are largely left to the discretion of the trial judge. Atkins v. Louisiana Mut. Med. Ins. Co., 47,374 (La.App.2d Cir. 11/07/12), 105 So.3d 781, 795, writ denied, 2013-0341 (La.04/01/13), 110 So.3d 585. When a motion for new trial is based on the contention that the judgment is clearly contrary to the law and evidence, no additional evidence may be presented at the hearing on the motion. Rivet, supra.
Attorney fees are not allowed except where authorized by contract or statute. State, Dept. of Transp. & Dev. v. Wagner, 2010-0050 (La.05/28/10), 38 So.3d 240, 241. Although Carroll Insulation made a claim' for attorney fees under LUTPA, which statute allows such an award, the trial court properly rejected the LUTPA claims. Whereas we agree that a breach of contract occurred pursuant to La. C.C. art. 2769, the code article does not provide for the imposition of attorney fees. Nor did the parties have a contract providing for attorney fobs. In so far as the trial court’s initial judgment allowed an award of attorney's fees to Carroll Insulation, it was contrary to law; therefore, the trial court properly granted the motion for new trial on this issue in favor of Biomax and Taylor. Moreover, the subsequent retraction of the attorney fee award was proper. Such an award to Carroll Insulation would have been a miscarriage of justice, as they were not provided for by contract or statute in this case. The retraction of the attorney fee award was within the trial court’s wide discretion, and this assignment of error has no merit.

[SDamages

Finally, Carroll Insulation disputes the measure of damages awarded by the trial court. The standard for reviewing the award of damages for breach of contract is whether the trial court abused its discretion. Storey v. Weaver, 49,027 (La.App.2d Cir.05/14/14), 139 So.3d 1079, 1084. If the plaintiff in a breach of contract case meets the burden of proof, the remedy is to reduce the contract price in an amount necessary to complete the work or to correct the defective work according to the terms of the contract. Lewis, supra; Cascio, supra.
*527 The trial court specifically determined - that the actions of Biomax and Taylor caused Carroll Insulation to incur additional costs to ensure that the faulty workmanship and products were corrected. Biomax and Taylor were ordered to reimburse Carroll Insulation “for the costs of remedying the defects” as follows:
Fifteen 5 gallon buckets of DC-315 thermal barrier.. .$5,633.13
Machine rented to spray barrier in kitchen area.103.17[1]
Gas for rental machine to spray barrier.14.36
Polyurethane purchased on 12/1/11 to hang in kitchen area for spraying bander .382.85
# 529 tip for spray gun.29.85
Tip extension for spray gun.35.81
Polyurethane purchased on 12/3/11 to hang in kitchen area for spraying barrier...432.51
Additional time paid to Jones to work on project.600.00
Labor to hang polyurethane for spraying barrier....664.00
Payment to Garland Insulating to spray DC-315 thermal barrier... 1,432.00
TOTAL.$9,377.68
Considering the expenses awarded to Carroll Insulation, we conclude that the trial court did not abuse its discretion, and the award is supported by the record. Carroll Insulation specifically argues that the trial court erred in failing to award the costs for installing fire/dampers and the costs of building and sheetrocking the wall separating the dining and kitchen areas of the restaurant, together totaling $7,310.00. However, as to those expenses, the trial court specifically determined that Carroll Insulation failed to prove that those costs were a direct result of the defendants’ breach, and Biomax and Taylor were relieved from that expense. This was a finding of fact, and considering the record, such a determination was not an abuse of discretion.
Additionálly, the trial court did not award Carroll Insulation its claims for fuel and meals for its workers. However, we note those are expenses that would have been incurred regardless of the defendants’ actions. Thus, the trial court was within its discretion in not awarding those claims as well.
Carroll Insulation also argues that the trial court erred in failing to award expert fees to George Moore and Intertek. As to the $1,200.00 expert witness fee for Moore, the trial court was-within its discretion in not making 11tithat award. Moore testified at trial but was not qualified as an expert in spray foam insulation; he was only qualified as an expert in general contracting/remodeling and forensic construction. Our review of the record does not indicate that Moore’s expert testimony actually added anything not already before the court; in fact, although Moore was admitted as an expert, much of his testimony was based bn factual observations that had already been made. As to the Intertek expert tests and fee of $600.00, it does not appear that the report did anything to elaborate on the actual facts of this case. Therefore, the trial court was within its discretion in not awarding the claims for fees attributable to Moore or Intertek.
Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Carroll Insula *528 tion & Window Co., Inc. and against Bio-max Spray Foam Insulation, LLC and Matt Taylor is affirmed. All costs of these appeals are to be assessed equally between Carroll Insulation (one-half) and Biomax and Taylor (one-half).
AFFIRMED.

. The testimony at trial indicated that the entire amount paid for the rental was $303.17, but $200.00 of that amount was a deposit. Thus, Carroll Insulation was not out-of-pocket for the entire $303.17, explaining the difference awarded. • ■